STATE OF NEBRASKA, APPELLEE, V. HERBERT HOPKINS, JR.,
APPELLANT.
377 N.W.2d 110

Filed December 6, 1985.   No. 85-121.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Timothy E. Divis, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Herbert Hopkins, Jr., appeals his conviction and sentence for first degree forcible sexual assault, after a bench trial in the district court for Adams County. We affirm the judgment of the district court.

In her Hastings home the victim, age 22, was babysitting a neighbor's little girl on the night of August 17, 1984. After putting the neighbor's child and victim's two children to bed, the victim retired around 10 p.m., wearing pajamas and panties. The victim was later awakened by her neighbor knocking on the front door to pick up her child. After the neighbor and her child left, the victim returned to bed but was again awakened by a knock at the front door sometime during the early morning of August 18. Half-awake and believing that her neighbor was returning, the victim opened the door and found Herbert Hopkins, an acquaintance of the victim and her husband. Hopkins stepped into the living room, where the victim informed Hopkins that her husband was not home. The victim's Doberman pinscher, "a pretty friendly dog," jumped on Hopkins. When the dog had calmed down, Hopkins resumed conversation with the victim and suggested sexual relations. The victim asked Hopkins to leave, and Hopkins "smacked" the victim in the left corner of her mouth. As the victim, bleeding from a lacerated or split lip, started for the kitchen, Hopkins grabbed her from behind, placed the victim's neck in an arm-vise, and began choking or strangling the victim until she could not breathe. Hopkins demanded that the victim remove her panties, which she did, and slapped the victim on the right side of her face before sexually penetrating the victim.

As soon as Hopkins left the victim's house, the victim ran to the home of the neighbor for whom she had been babysitting. The time was approximately 3 a.m., according to the neighbor who was awakened by the victim's beating on the door and screaming "Help me. Help me." At the neighbor's, the victim—hysterical, crying, and blood-covered, with her lip "swollen up"—recounted that "Herb had hit her" and "Herb

had attacked her." Ten minutes later, the neighbor went to the victim's house to get the children of the victim and saw blood in the kitchen and living room. On August 18 the victim reported the assault to the Adams County sheriff and was examined at the emergency room of a local hospital. The examining physician found a "T-shaped laceration of the upper left lip with a lot of swelling in that same area," and also noted a laceration inside the victim's mouth at the "gum line" as well as a bruise with a "purplish-blue color like a fresh bruise would be" beneath the victim's left jaw. Authorities recovered not only a blood-soaked rag used to wipe blood from the floor of the victim's house but the victim's bloodstained panties and pajamas as well. Sheriff's personnel took photographs depicting the victim's physical injuries.

In the evening of August 18, Deputy Sheriff Gordon Sidlow went to Hopkins' home and transported him to the sheriff's office. After *Miranda* admonitions, Hopkins gave a tape-recorded, and later transcribed, statement to deputy sheriffs. Hopkins stated that he had been drinking on the night of August 17 but could not recall his whereabouts during the early morning of August 18. Hopkins answered "Yes," when asked if he might have struck the victim; "Possibly" and "Probably could have" to inquiries whether he had sexual relations with the victim; and "I don't know. Could be," when asked whether he had sexual relations with the victim against her will on August 18. While maintaining he could not recall his whereabouts during the morning of August 18, Hopkins did have a vague recollection of the victim's Doberman jumping on him. Hopkins was arrested on August 19.

On September 26, Hopkins was arraigned on the information charging him with first degree forcible sexual assault in violation of Neb. Rev. Stat. § 28-319(1)(a) (Reissue 1979) and entered a plea of not guilty.

Pursuant to Neb. Rev. Stat. § 28-321(1) (Cum. Supp. 1984), Hopkins notified the county attorney concerning Hopkins' intention to offer evidence of the victim's past sexual behavior and then filed a "Motion to Allow Evidence of Past Sexual Behavior," seeking an in camera hearing to establish the admissibility of (1) the victim's past sexual relations with

Hopkins, claimed to be relevant to the issue of the victim's consent to the sexual act charged in the information, and (2) the victim's past sexual relations with persons other than Hopkins, claimed to be relevant to the question of identifying the source of the State's physical evidence to be used in establishing Hopkins' contact with the victim.

At the in camera hearing authorized by § 28-321(2), Hopkins offered proof consisting solely of the victim's testimony, that is, during the 2-month period from April to May 1984, the victim had sexual relations with Hopkins on five separate occasions in the presence of the victim's husband who joined Hopkins in sexual intercourse with the victim. No evidence was presented concerning Hopkins' presence in the victim's home during the early hours of August 18, except the victim's testimony about her violent contact with Hopkins. At conclusion of the hearing, the court determined that evidence of the five instances of the victim's prior sexual activity constituted a "pattern of behavior," was "relevant on the issue of consent," and, therefore, was admissible. The court overruled Hopkins' motion regarding admission of evidence concerning the victim's prior sexual relations with persons other than Hopkins.

The State filed a motion for rehearing regarding the court's decision to admit evidence about the five episodes of the victim's prior sexual acts with Hopkins. After hearing argument on the State's motion, the court set aside its previous order and ruled that Hopkins' offer of proof was insufficient to establish relevancy of the victim's past sexual behavior.

Hopkins waived a trial by jury. During the bench trial, the State's evidence consisted of testimony from the victim, who related the details of Hopkins' sexual assault on her; the victim's neighbor and another, who described the victim's condition upon arrival at the neighbor's residence early on August 18; the emergency room physician, who described the victim's condition, including injuries sustained; and Deputy Sidlow—all as previously set forth in this opinion. The State introduced physical evidence, including the victim's clothing and the blood-soaked rag, and also introduced the photographs depicting the victim's split lip and other bodily injury. Also received in evidence was Hopkins' statement given to sheriff's

personnel on August 18.

Responding to the State's case, Hopkins called Sipo Collins, who testified that Hopkins and he had been drinking in Grand Island on the evening of August 17, returned to Hastings in Hopkins' car around 1:30 a.m. on August 18, and went to a house in the locality of the victim's residence, where Hopkins parked his car in the driveway. While Collins remained in the car, Hopkins knocked at the door of the house, entered, and reappeared about 15 minutes later. According to Sipo Collins, there was nothing out of the ordinary, and they then drove around Hastings for a while. Hopkins testified about his drinking with Collins during the evening of August 17, leaving Grand Island around 1 a.m. on August 18, and not being able to remember anything about the early morning of August 18 except the victim's Doberman jumping on him.

Upon conclusion of all evidence, the court found Hopkins guilty of first degree forcible sexual assault and, after a presentence investigation and report, sentenced Hopkins to the Nebraska Penal and Correctional Complex for a term of 3 to 7 years.

Hopkins contends the district court erred in (1) refusing to admit evidence of the victim's past sexual activity with Hopkins; (2) refusing to sustain Hopkins' motion to dismiss the information as the result of insufficient evidence and lack of corroboration; and (3) refusing to place Hopkins on probation and imposing a sentence which was excessive and disproportionate to the severity of the offense.

Hopkins' first assignment of error requires that we, for the first time, examine § 28-321 pertaining to admissibility of evidence regarding a victim's past sexual behavior. Background for § 28-321 is noteworthy.

For years, in passing upon admissibility of evidence concerning a victim's past sexual activity, courts have considered a victim's past sexual behavior as relevant to the issue of consent to the sexual act for which a defendant was being prosecuted. See Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum. L. Rev. 1 (1977). The "logical underpinnings" of that view, although shaky in the extreme, have been well documented, see Berger,

*supra* at 22-29, and were, perhaps, epitomized in a 1915 decision by the Tennessee Supreme Court: "[N]o impartial mind can resist the conclusion that a female who has been in the recent habit of illicit intercourse with others will not be so likely to resist as one who is spotless and pure." *Lee v. State*, 132 Tenn. 655, 658, 179 S.W. 145 (1915). No less a distinguished scholar than Dean Wigmore maintained a victim's character for chastity should be admitted on the issue of a victim's overall "credibility." 1A J. Wigmore, Evidence in Trials at Common Law § 62 (Tillers rev. 1983).

In historical perspective, Nebraska was no exception and, generally, recognized admissibility of evidence regarding a rape victim's past consensual sexual behavior. For instance, in *Frank v. State*, 150 Neb. 745, 35 N.W.2d 816 (1949), this court, citing 3 J. Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law §§ 924*a* and 979 (3d ed. 1940), held that it was

> prejudicial error to exclude any direct competent evidence not too remote in time, showing specific immoral or unchaste acts and conduct by [the victim] with others, not only for the purpose of being considered by the jury in deciding the weight and credibility of her testimony generally, but for the purpose of inferring the probability of consent and discrediting her testimony relating to force or violence used by defendant in accomplishing his purpose and her claimed resistance thereto.

150 Neb. at 753, 35 N.W.2d at 822. Likewise, in *State v. Hunt*, 178 Neb. 783, 135 N.W.2d 475 (1965), this court dealt with the admissibility of specific instances of a victim's consensual sexual activity, holding that evidence of a victim's previous sexual relations with others was admissible as a "circumstance on the issue of consent." *Id*. at 787, 135 N.W.2d at 478. Thus, a rape victim's past sexual behavior became substantive evidence from which to infer consent to the sexual act involving an alleged rapist.

Visions of detailed disclosure required by an evidentiary rule applied in a public courtroom may have been a deterrent to a victim's reporting rape. Well-founded or speculative prospects of an extensive inquiry into their sex lives prompted some rape

victims to forgo the additional trauma of a courtroom ordeal and refuse to assist prosecution and punishment of a brutal and barbaric act. As a result of admitting evidence about a victim's previous sexual behavior, a rape victim was frequently compelled to answer embarrassing and sometimes cynical or painful questions on cross-examination about her sexual activities occurring before the event for which an alleged rapist was prosecuted. Grueling and excruciating cross-examination of a rape victim often achieved only evidence having questionable relevance to the case being tried. No longer the accuser, the victim was forced to defend herself against accusations made on varying and nebulous notions of unchastity, impurity, and immorality. See Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom*, 77 Colum. L. Rev. 1 (1977). See, also, Bohmer & Blumberg, *Twice Traumatized: the rape victim and the court*, 58 Judicature 391 (1975); Comment, *The Rape Victim: A Victim of Society and the Law*, 11 Willamette L.J. 36 (1974).

Often, legislative response to the problem in prosecuting rape cases was a "rape shield law" designed to limit courtroom inquiry into a victim's past sexual activities. At the forefront of these laws was Fed. R. Evid. 412, passed in 1978, in part, to govern the admissibility of a victim's prior sexual relations as evidence in rape prosecutions in federal courts, but also to serve as a model and impetus for needed changes in state laws. See 124 Cong. Rec. 36,256 (1978) (statement of Sen. Bayh). Federal Rule 412 precludes admission of reputation or opinion evidence regarding a victim's past sexual activities and restricts admissibility of specific instances of past sexual activity to situations involving a victim's (1) relations with third persons when offered by the accused on the issue of the source of semen or injury or (2) relations with the accused when offered by the accused on the issue of consent. The vast majority of states have adopted some variant rule of evidence substantially similar to federal Rule 412. See 1A J. Wigmore, Evidence in Trials at Common Law § 62 n.11 (Tillers rev. 1983).

In 1975 the Nebraska Legislature enacted Neb. Rev. Stat. §§ 28-408.01 et seq. (Reissue 1975) as an overall revision of sexual assault legislation designed to "protect the dignity of the

victim at all stages of the judicial process." § 28-408.01. That 1975 legislation authorized an in camera hearing to determine whether the victim's past sexual conduct was relevant to a pending prosecution. Section 28-408.05(3) contained an exclusionary provision that

> [s]pecific instances of prior sexual activity between the victim and any person other than the defendant shall not be admitted into evidence . . . unless consent by the victim is at issue, when . . . such activity shows a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

Although the Legislature in 1975 "adopted a stricter rule than was formerly the case regarding the admissibility of evidence of a sexual assault victim's past sexual conduct," *State v. Tiff*, 199 Neb. 519, 527, 260 N.W.2d 296, 301 (1977), § 28-408.05(3) did not address admissibility of a victim's past sexual activity with a defendant charged in a rape case and did not impose a specific bar to admitting evidence of a victim's previous sexual relations with anyone other than a defendant accused of rape. In 1977 the Eighty-fifth Legislature, First Session, passed L.B. 38 which recodified § 28-408.05 at Neb. Rev. Stat. §§ 28-321 through 28-323 (Cum. Supp. 1978).

Eventually, in 1984 the Eighty-eighth Legislature, Second Session, enacted L.B. 79, now codified as § 28-321 (Cum. Supp. 1984) as follows:

> (1) If the defendant intends to offer evidence of specific instances of the victim's past sexual behavior, notice of such intention shall be given to the prosecuting attorney and filed with the court not later than fifteen days before trial.
>
> (2) Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior. Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is:
> (a) Evidence of past sexual behavior with persons other

than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

Instead of providing an additional and separate rule in the Nebraska Evidence Rules (Neb. Rev. Stat. §§ 27-101 et seq. (Reissue 1979 & Cum. Supp. 1984)), the Legislature, in enacting § 28-321, still sought a parallel to federal Rule 412. See Introducer's Statement of Intent, L.B. 79, Judiciary Committee, 88th Leg., 2d Sess. (Jan. 26, 1983). An objective of § 28-321, as well as federal Rule 412, is a restriction, on admissibility of a victim's past sexual behavior as evidence in sexual assault cases. Patterned on federal Rule 412, § 28-321(2) excludes evidence of a victim's past sexual behavior unless evidence "offered by the defendant" at an in camera hearing shows that (1) the victim's past sexual behavior with anyone other than the defendant has some bearing on the question whether the defendant is the source of physical evidence in the prosecution for sexual assault or (2) the victim's past sexual behavior with a defendant is related to the issue of the victim's consent to the sexual act involved in the prosecution of the defendant, provided that such evidence demonstrates some reasonably associative relationship between the victim's past sexual behavior and the sexual act for which the defendant is prosecuted and, further provided, that such evidence shows a victim's pattern of conduct or behavior which may be construed as consent to the sexual act charged against the defendant. See *People v Williams*, 416 Mich. 25, 330 N.W.2d 823 (1982) (necessity of "logical relevance" between the prior sexual acts and the issue of consent). Implicit in § 28-321(2)(b) is an evidentiary syllogism. Major: The victim's past sexual behavior

with the defendant was consensual. Minor: The victim's behavior in the present prosecution is the type of activity in which the victim participated with the defendant in the past. Conclusion: Therefore, the victim's behavior in the present prosecution was consensual.

Admissibility of evidence concerning a victim's past sexual behavior with a defendant is controlled by § 28-321(2)(b), which is a statutory species of relevant evidence and permits evidence of a victim's prior sexual relations with a defendant "when such evidence is offered by the defendant on the issue of whether the victim consented." This language found in § 28-321 is virtually identical with that in federal Rule 412. In reference to federal Rule 412, some authors have concluded that a victim's past sexual conduct is admissible "only when the defense, in effect, admits the defendant had intercourse with the victim but wishes to show that she was a willing participant in the act." 23 C. Wright & K. Graham, Federal Practice and Procedure § 5389 at 606-07 (1980). According to Wright and Graham, the court should determine whether consent is a contested issue by "examining the evidence [at the in camera] hearing." 23 C. Wright & K. Graham, *supra* § 5389 at 606. Nevertheless, the Nebraska Legislature has enacted § 28-321(2)(b) with the manifest intent to restrict admissibility of evidence concerning a victim's past sexual behavior with a defendant. In authorizing an in camera hearing for adduction of evidence establishing relevancy of a victim's prior sexual behavior, and by referring to evidence "offered by the defendant on the issue of whether the victim consented," the Legislature has imposed a condition for admissibility of evidence concerning a victim's past sexual behavior with a defendant, namely, relevance limited to those cases where a defendant at an in camera hearing has satisfied the requirement of a prima facie showing that the victim has consented to the sexual act charged against the defendant as a crime. Thus, for purposes of § 28-321(2)(b), we hold, in order that a victim's past consensual sexual behavior with a defendant be admitted as evidence relevant to a charge of sexual assault, the defendant must, by offer of proof at the in camera hearing, adduce some evidence tending to prove a defendant's claim that the victim

consented to the sexual act which is the subject of the prosecuted charge against the defendant. Our construction of § 28-321(2)(b) conforms with the view held by a majority of courts before the advent of rape shield laws, namely, the requirement that a defendant by appropriate evidence must raise the issue of a victim's consent before evidence of a victim's previous consensual sexual behavior toward the defendant is admissible. See, *State v. Cunningham*, 97 Idaho 650, 551 P.2d 605 (1976); *State v. Settle*, 111 Ariz. 394, 531 P.2d 151 (1975); *People v. Schafer*, 4 Cal. App. 3d 554, 84 Cal. Rptr. 464 (1970); *Shapard v. State*, 437 P.2d 565 (Okla. Crim. 1967); *People v. Gabler*, 111 Ill. App. 2d 121, 249 N.E.2d 340 (1969); *State v. Sims*, 30 Utah.2d 357, 517 P.2d 1315 (1974). See, also, *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (1978) (under New Mexico's "rape shield law," absent a showing sufficient to raise the issue of a victim's consent, past sexual conduct is inadmissible in the prosecution of a criminal assault case).

Hopkins contends the district court should have admitted evidence of the five prior incidents of sexual activity involving Hopkins, the victim, and the victim's husband. Hopkins argues that, under § 28-321(2)(b), previous sexual encounters with the victim were relevant to the issue of the victim's consent to the sexual relations on which the criminal prosecution was based. At the in camera hearing, however, the only evidence offered by Hopkins consisted of the victim's acknowledgment of her five previous incidents involving sexual relations with Hopkins. Hopkins produced no evidence indicating that the victim had consented to sexual relations with him on August 18. Consequently, at the in camera hearing there was no evidence of any express or inferential consent on the part of the victim. Hopkins has failed to present evidence supplying the minor premise in the evidentiary syllogism implicit in § 28-321(2)(b). The court properly excluded evidence of the victim's past sexual relations with Hopkins.

We in no manner imply that the State is relieved of its burden to prove by evidence beyond a reasonable doubt that sexual penetration was accomplished by a defendant through force. We do, however, acknowledge that admissibility of evidence concerning a victim's past sexual behavior involves evidentiary

and patent policy considerations independent of the Nebraska Evidence Rules. We also note that once a defendant has properly adduced evidence of a victim's consent to the act charged in a present criminal prosecution, the court must still determine whether a victim's past sexual behavior is, under § 28-321(2)(b), relevant to the issue of consent. The court must consider the question whether the victim's past sexual behavior "shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent." Further, although evidence of a victim's past sexual behavior may be admissible under § 28-321(2)(b) on the issue of consent, the trial court, nevertheless, may apply the balance found in Neb. Evid. R. 403, that is, exclusion if the probative value of the otherwise relevant evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In his second assignment of error, Hopkins contends that the victim's testimony was not sufficiently corroborated and that there is insufficient evidence to support his conviction. We dispatch that assignment of error by reaffirming the rule enunciated in several cases.

> The general rule is that testimony of the victim of a sexual assault must be corroborated as to material facts and circumstances which tend to support the victim's testimony and from which, together with the victim's testimony as to the principal fact, an inference of guilt may be drawn. Corroboration of the principal act constituting the offense is not required.

*State v. Craig*, 219 Neb. 70, 79, 361 N.W.2d 206, 214 (1985).

In the present case the record is replete with evidence sufficient to corroborate the victim's testimony and establish Hopkins' commission of the crime charged. The victim testified positively about sexual penetration by Hopkins. Evidence shows that the victim suffered bruises to her body and received a harsh blow to her mouth. The victim's neighbor testified that the hysterical victim—bruised, battered, and bloody—came to the neighbor's house in the early morning of August 18 and

complained that she had been struck and attacked by Hopkins. Hopkins virtually admitted his presence at the victim's home sometime during the early morning of August 18 when he testified about his recollection of the victim's jumping Doberman. Testimony of Sipo Collins, Hopkins' companion on August 17 and 18, provides some circumstantial evidence, as well. The victim's testimony is corroborated concerning material facts and circumstances from which an inference of guilt may be drawn. See *State v. Craig, supra*. Since the victim's testimony was sufficiently corroborated, there can be no question that the evidence was sufficient to sustain Hopkins' conviction.

Finally, Hopkins asserts that the sentence imposed by the district court, namely, imprisonment for a term of 3 to 7 years, is excessive. Forcible sexual assault is a Class II felony punishable by imprisonment for a term of 1 to 50 years. See Neb. Rev. Stat. §§ 28-319(2) and 28-105(1) (Reissue 1979).

The sentence imposed by the district court was well within the statutory limits as punishment for a Class II felony. Probation was an optional sentence available to the district court but was rejected as inappropriate under the circumstances. We are unable to conclude and state that the district court abused its discretion in sentencing a man convicted of first degree forcible sexual assault to imprisonment for a term of 3 to 7 years. Therefore, the sentence imposed is affirmed. See, *State v. Sims*, 213 Neb. 708, 331 N.W.2d 255 (1983); *State v. Schmidt*, 213 Neb. 126, 327 N.W.2d 624 (1982).

The judgment of the district court is correct in all respects and, therefore, is affirmed.

AFFIRMED.