STATE OF NEBRASKA, APPELLEE, V. DANIEL J. SCHENCK, APPELLANT.

384 N.W.2d 642

Filed April 11, 1986.   No. 85-603.

James R. Wefso, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and BLUE, D.J.

HASTINGS, J.

Daniel J. Schenck appeals his conviction by jury for first degree sexual assault. Schenck was sentenced to 5 to 15 years' imprisonment. We affirm the trial court proceedings.

The prosecutor offered evidence of the following events. The victim, L.H., met Schenck in a Hay Springs bar on Friday, March 1, 1985. In the course of the evening they discovered that they shared the same birthday (March 3), so L.H. invited Schenck to celebrate with her and her friends at another Hay Springs bar on Saturday night. Schenck did not join them.

On her birthday, Sunday, March 3, 1985, L.H. spent the evening in her home in Hay Springs, reading a book. At about 1 a.m., March 4, L.H. got up from the living room couch, preparing to go to bed, unlocked the front door to let her dog out, and went into the bathroom to brush her teeth. When the dog started to bark, L.H. came out of the bathroom and saw Schenck coming through her front door. Schenck said he had heard there was a party at her house, and L.H. responded that there was not and that she did not appreciate visitors at that hour of the night. It had been snowing heavily that evening, so L.H. consented when Schenck asked if he could stay a few minutes to warm up.

Schenck initiated a rambling and repetitive conversation, during which L.H. repeatedly asked Schenck to leave. L.H. finally got angry, handed Schenck his coat, and ordered him to leave.

As L.H. opened the front door, her dog ran out, and Schenck slammed the door behind it. He grabbed L.H. by the waist, pulling her away from the door. The two struggled for quite some time, with L.H. escaping Schenck's grasp, only to be caught and dragged by the wrists and upper arms into the bedroom time and again. Schenck ripped open L.H.'s blouse and pulled her bra up around her neck. Her threats to identify him to the police were of no avail.

L.H. was becoming exhausted, and she realized that the more she struggled the more violent Schenck became. Pinned on the bed, L.H. told Schenck that she would stop struggling if he would stop hurting her. Schenck agreed, as long as she promised to do everything he ordered.

Hoping to delay or escape her attacker, L.H. asked to go to the bathroom for some lotion to prevent her injury. Schenck allowed her to enter the bathroom but held onto her arm constantly. When they returned to the bedroom, Schenck penetrated L.H. Failing to ejaculate, Schenck stopped, asked L.H. to "participate," and talked at length about his deep feelings for her and his bewilderment as to how to approach her.

L.H. tried to convince Schenck to leave, and at one point sat up to go to the bathroom, only to be pushed back down. Finally, she admitted to Schenck that she was afraid if he did not leave, she would not be alive in the morning. At that point Schenck penetrated L.H. again, but again failed to ejaculate. When Schenck rolled to one side of the bed, L.H. asked to go to the bathroom and Schenck murmured "huh-uh."

As L.H. left the bedroom, she grabbed a nightgown that was among the clean laundry that had been thrown off the bed during the struggle. She ran out the front door naked, and put the nightgown on en route to her best friend's house. L.H. ran the 2½ blocks barefoot in the snow, arriving at her friend's house at 3:30 a.m. L.H. told her friend that Schenck had raped her, and the friend called the police. L.H. was still sobbing and crying when the deputy sheriffs arrived at 4 a.m. Because she was so upset, it was difficult for L.H. to respond to the deputies' questions.

Between 6 and 6:30, the deputies took L.H. to the Rushville Hospital. At the hospital Dr. Pearl Narvaez, who did not testify at trial, examined L.H. Although there is no evidence that the doctor observed bruises on L.H.'s arms, there is also no evidence that she did not. The attending nurse was busy marking specimens during the examination, but did testify that she noticed an abrasion on L.H.'s left wrist.

After the examination Deputy Puchner took L.H. to the sheriff's office to take her statement. At that time L.H. showed the deputy the bruises on her upper arms.

On March 18 L.H. was examined by Dr. Margaret Stockwell, who testified at trial. She testified that bruises are usually caused by blunt trauma and often take time to develop. They may not be observable until a half day or a day after the trauma occurred. Bruises last variable lengths of time and change color

over time; green and yellow being latter stages. Dr. Stockwell testified that it was possible for blunt trauma suffered on March 4 to cause bruises which would still be visible on March 18, and would probably be yellow or green in color. She also testified that on March 18 L.H. had yellow and green bruises of various sizes on her arms and one on her leg, along with scratch marks of the same age. These bruises were consistent with L.H.'s complaint of Schenck's squeezing and pulling her arms.

After the March 18 examination photographs of L.H.'s bruised upper arms were taken at the sheriff's office. These were offered as exhibits 8 and 9 at trial and were identified by L.H. Also exhibited at trial were photographs of L.H.'s disheveled bedroom, a stained nightgown, and L.H.'s blouse with all but one button torn off.

Schenck testified that he and L.H. engaged in consensual sexual intercourse on March 4, 1985. However, when he testified that he had not seen L.H. in a police cruiser after the alleged sexual assault, Schenck was very effectively impeached for credibility. He admitted that in one of his first interrogations he told an officer that he thought he saw a "cop car" in Hay Springs with L.H. inside and that "kind of paranoid me out," so he went to a friend's house in Alliance.

In his assignments of error Schenck argues that the district court erred in (1) denying his motion to declare the rape shield law, Neb. Rev. Stat. § 28-321 (Cum. Supp. 1984), unconstitutional; (2) finding sufficient evidence to convict; (3) admitting Dr. Stockwell's expert testimony on bruises; (4) admitting the photographs of bruises without proper foundation; (5) admitting L.H.'s testimony stating her weight at the time of the incident and at the time of trial; (6) denying Schenck's motion to dismiss at the conclusion of the State's evidence; (7) denying Schenck's motion for new trial; and (8) imposing an excessive sentence.

In support of his first assignment of error, challenging the constitutionality of Nebraska's rape shield law, Schenck argues that the statute deprives him of due process by preventing him from presenting evidence in his own defense. He is willing to concede that in many sexual assault cases evidence of past sexual conduct by the victim is not relevant. Schenck objects,

however, to the almost blanket prohibition of such evidence by § 28-321, suggesting that the statute gives the presiding judge insufficient discretion to determine the relevancy of such evidence.

The pertinent subsection of the rape shield law provides:

(2) Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior. Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

§ 28-321. The legislative purpose and history of this statute is amply discussed in *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985). Stated briefly, the statutory purpose was to protect rape victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. The quoted statute is patterned after Fed. R. Evid. 412, in that it presumes that evidence of specific instances of a victim's past sexual activities is irrelevant and inadmissible unless it involves the victim's (1) relations with third persons when offered by the accused on the issue of the source of semen or injury or (2) relations with the accused when offered by the accused on the issue of consent.

As we noted in *Hopkins*, the vast majority of states have

adopted rape shield laws based substantially on Rule 412. 1A J. Wigmore, Evidence in Trials at Common Law § 62 n.11 (Tillers rev. 1983). Despite the prevalence of rape shield laws patterned after Rule 412, the appellant is unable to cite any such statute that has been found facially unconstitutional. In fact, statutes similar to § 28-321 have consistently withstood constitutional challenges such as that brought by Schenck in the current case. See, e.g., *People v Williams*, 416 Mich. 25, 330 N.W.2d 823 (1982); *People v. Requena*, 105 Ill. App. 3d 831, 435 N.E.2d 125 (1982), *cert. denied* 459 U.S. 1204, 103 S. Ct. 1191, 75 L. Ed. 2d 436 (1983); *People v. Cornes*, 80 Ill. App. 3d 166, 399 N.E.2d 1346 (1980); *State v. Gardner*, 59 Ohio St. 2d 14, 391 N.E.2d 337 (1979); *State v. Ryan*, 157 N.J. Super. 121, 384 A.2d 570 (1978).

The Nebraska Legislature operated well within its prerogative in enacting § 28-321, excluding irrelevant details of the victims' sexual histories from evidence in sexual assault trials. The exclusion of this evidence does not prevent defendants from presenting relevant evidence in their own defense. "It merely denies defendant the opportunity to harass and humiliate the complainant at trial and divert the attention of the jury to issues not relevant to the controversy." *People v. Cornes, supra* at 175, 399 N.E.2d at 1353. A defendant has no constitutional right to inquire into irrelevant matters. *Pratt v. Parratt*, 615 F.2d 486 (8th Cir. 1980).

Interestingly enough, the evidence Schenck sought to introduce in contravention of § 28-321 was precisely the type of evidence these statutes were originally designed to exclude: that of the victim's previous consensual sexual relations with third parties. As was suggested by the trial judge, evidence of prior voluntary sexual conduct by the complaining witness with third parties is no more relevant in a prosecution of the defendant for forcible sexual assault than would previous instances of money gifts by the prosecutrix to third parties have any relevancy to a charge against the defendant of robbery of the victim. Section 28-321 is not unconstitutional on its face or as applied.

We also reject the appellant's second assignment of error. There was sufficient evidence to support his conviction of first degree sexual assault. In determining the sufficiency of the

evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact. The verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985).

In his defense Schenck offered the testimony of two of L.H.'s friends to whom she had related the details of the sexual assault. Their testimony brought out some slight factual discrepancies in L.H.'s accounts of the incident. For example, one of her friends testified that L.H. had told her she had been in bed before Schenck arrived, rather than on the living room couch. Another friend testified that he had been told that Schenck fell asleep before L.H. ran from the house naked. In his argument that he was convicted on insufficient evidence, it is this testimony that Schenck asserts. The appellant misunderstands the concept of challenging a conviction on insufficient evidence.

The testimony of L.H.'s confidants addresses the credibility of the prosecutrix. Though it might have caused the jury to doubt L.H.'s account of the alleged sexual assault, that testimony did not negate, erase, or eradicate the evidence that the sexual assault took place. The jury apparently chose to believe L.H.'s explanation of the incident at trial. This court cannot now reweigh the credibility of the witnesses. After a jury has considered all of the evidence and returned a verdict of guilty, that verdict may not, as a matter of law, be set aside on appeal for insufficiency of evidence if the evidence sustained some rational theory of guilt. *State v. Wilkening, ante* p. 107, 382 N.W.2d 340 (1986).

In his third assignment of error Schenck contends that the trial court erred in overruling defense objections to the expert testimony of Margaret Stockwell, M.D., regarding bruises sustained by L.H. The appellant suggests that due to the 2-week delay between the alleged assault and Dr. Stockwell's examination of the victim, there was a lack of foundation established to allow Dr. Stockwell to express her opinions. We disagree. The 2-week interim before Dr. Stockwell's

examination was the very factor that made Dr. Stockwell's expert testimony on the nature and healing of bruises useful to the jury.

The Nebraska Evidence Rules provide:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Neb. Rev. Stat. § 27-702 (Reissue 1979).

Since Dr. Stockwell did not observe L.H.'s bruises until 2 weeks after the alleged sexual assault, the jury needed specialized knowledge to determine whether those bruises could have been sustained 2 weeks earlier. It is for the trial court to make the initial decision on whether the testimony of an expert will assist the trier of fact. The soundness of its determination depends upon the qualification of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. *National Bank of Commerce Trust & Sav. Assn. v. Katleman*, 201 Neb. 165, 266 N.W.2d 736 (1978). See, also, *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983); *State v. Ammons*, 208 Neb. 812, 305 N.W.2d 812 (1981). The trial court did not abuse its discretion in admitting the expert testimony of Dr. Stockwell.

Also assigned as error was the admission into evidence of photographs of bruises on L.H.'s upper arms. Schenck argues that because the photographs were taken 14 days after the alleged sexual assault, the State was unable to establish proper foundation for their admission. The appellant asserts that since the medical staff members that examined L.H. on March 4 at the Rushville Hospital did not testify that they observed the victim's bruises, the photographs are not competent proof that L.H. sustained bruises on March 4.

The failure of the State, however, to offer the ideal, direct evidence of a fact in controversy does not render incompetent other circumstantial evidence of the same fact. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 1979).

Furthermore, the record indicates that Deputy Puchner saw L.H.'s bruises on March 4. His testimony, and that of L.H. testifying to the appearance of the bruises on that date and identifying the photographs, and Dr. Stockwell's expert testimony on the nature of bruises and their healing process were sufficient foundation for the admission of the photographs admitted as exhibits 8 and 9.

As his final assignment of error on an evidentiary matter, Schenck argues that the trial court erred in overruling his objection to L.H.'s testimony regarding her weight at the time of the alleged assault and at the time of trial. At trial the appellant objected to the testimony on the ground that it was beyond the scope of cross-examination. He has apparently abandoned this theory of inadmissibility on appeal, since, in his brief, his sole argument concerning the evidence on L.H.'s weight is that the testimony was intended to arouse sympathy. We do not agree that the probative value of the evidence was outweighed by the danger of unfair prejudice.

L.H. testified that her weight had changed from 118 to 104 pounds. Her weight at the time of the sexual assault was clearly relevant to the jury's assessment of evidence of the physical struggle between L.H. and Schenck, and of injuries sustained by L.H. Since the jury had an opportunity to observe L.H. at trial, the weight differential might have proved useful in that same assessment. The determination of the admissibility of evidence rests within the sound discretion of the trial court. *State v. Fries*, 214 Neb. 874, 337 N.W.2d 398 (1983). Evidence of the 14-pound weight loss by L.H. was not so prejudicial as to establish an abuse of discretion by the trial court.

We also overrule the appellant's sixth assignment of error. In a prosecution in which the State has introduced competent evidence which, if believed by the jury, was sufficient to establish all elements of the crime charged against the defendant, denial of the defendant's motion to dismiss is without error. *State v. Hurlburt*, 218 Neb. 121, 352 N.W.2d 602 (1984).

Our recital of the facts and our previously stated conclusion that the State presented sufficient evidence to convict leave little

doubt that the State offered sufficient evidence to establish all elements of first degree sexual assault. Neb. Rev. Stat. § 28-319 (Reissue 1979). The trial court properly overruled the appellant's motion to dismiss.

Appellant argues that the trial court erred in denying his motion for new trial, contending that there was insufficient evidence as a matter of law to convict on first degree sexual assault and that his evidentiary objections were improperly overruled. As we have already decided that there was sufficient evidence to support Schenck's conviction and that the trial court was not in error in its evidentiary rulings, we find this assignment is also without merit. Under Neb. Rev. Stat. § 29-2101 (Reissue 1979), the trial court was correct in denying the motion for new trial.

Finally, the appellant assigns as error the imposition of an excessive sentence. First degree sexual assault is a Class II felony, punishable by imprisonment for not less than 1 year nor more than 50 years. Neb. Rev. Stat. §§ 28-319, 28-105 (Reissue 1979). The appellant was sentenced to the Nebraska Penal and Correctional Complex for not less than 5 years nor more than 15 years, with credit for 114 days spent in custody.

When the punishment of an offense created by statute is left to the discretion of the trial court, to be exercised within certain prescribed limits, a sentence imposed within those limits will not be disturbed on appeal unless the record reveals an abuse of discretion. *State v. Smith*, 221 Neb. 406, 377 N.W.2d 527 (1985); *State v. Davis*, 200 Neb. 557, 264 N.W.2d 198 (1978).

The trial court was in agreement with the jury that the appellant committed the offense with which he was charged. It also concluded that Schenck had perjured himself at trial and that he showed no remorse for his acts. The court did not abuse its discretion in imposing the sentence it did. The judgment is affirmed.

AFFIRMED.