STATE OF NEBRASKA, APPELLEE, V.
ROBERT R. JOHNSON, APPELLANT.

602 N.W. 2d 253

Filed October 19, 1999.   No. A-98-1203.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Robert R. Johnson was charged by information with first degree sexual assault to which he entered a plea of not guilty. After a jury trial in August 1998 in the Adams County District Court, Johnson was convicted and sentenced to not less than 3 nor more than 5 years' imprisonment. Johnson now appeals to this court.

## BACKGROUND

Johnson was charged by an information filed in the Adams County District Court with first degree sexual assault of M.L.H. on or between December 22 and 23, 1995.

M.L.H. first became acquainted with Johnson in August 1994 when she was dating Dave Wolz, Johnson's friend and roommate. M.L.H. dated Wolz for about 6 months and socialized with Johnson and his girl friend, Kelly Fielder, during this time period. Fielder was M.L.H.'s best friend at that time. After M.L.H. and Wolz stopped dating, M.L.H. continued to socialize with Johnson and Fielder.

M.L.H., Johnson, and Fielder took a trip to Kansas City, Missouri, in July 1995. The three shared a hotel room, with Fielder and Johnson sharing one bed and M.L.H. in another. On this trip, M.L.H. testified that Johnson unlocked the bathroom door while she was taking a shower, which made her uncomfortable. Johnson made the suggestion that M.L.H., Fielder, and he should have a "threesome," to which M.L.H. said no and that she did not want to do anything with him of such a nature.

Both M.L.H. and Johnson testified that Johnson flirted with M.L.H. and repeatedly asked her to have sex with him, and that she always said no. M.L.H. stated that she was not attracted to Johnson and testified that Johnson's advances got to the point that they did not bother her.

On December 22, 1995, Fielder and Johnson picked M.L.H. up in Johnson's car, and the three went to a bar together. At the bar, the three danced and had drinks. M.L.H. drank five to six drinks and testified that Johnson probably had more. At about 11:30 p.m., the three left and returned to Johnson and Fielder's apartment. After staying there for approximately 10 minutes, M.L.H. stated that she did not feel well and wanted to go home. Johnson told Fielder that he would take M.L.H. home and that Fielder should stay there at the apartment. Johnson and M.L.H. then got in Johnson's car to go to M.L.H.'s home, where she lived with her parents, which was approximately four blocks away. From this point forward, the testimony is in conflict.

M.L.H. testified that on the way to her house, Johnson did not turn when she expected him to, but, rather, drove another block, turned left, and parked the car. At this time, Johnson turned

toward M.L.H., grabbed her left leg, and pulled it over to the side between the back of the seat and his body. M.L.H.'s head was caught by the door. She told Johnson that she wanted to go home, but he did not let her leave. Johnson unbuttoned and pulled down her pants, pulled her shirt and bra up, lifted her right leg, and performed oral sex on her. M.L.H. tried to push him away, but could not because her legs were caught, as was her head. Johnson then had intercourse with M.L.H. and stopped after a few minutes. M.L.H. stated that Johnson stopped "because he said he didn't want to get me pregnant." M.L.H. testified that she did not want to have intercourse with Johnson and communicated that to him by telling him no during the incident. She stated at trial that "[d]uring the whole thing I was saying no and trying to push him off, and I was crying and said I wanted to go home." Afterward, Johnson pulled up his pants and told M.L.H. to put her clothes back on. Johnson then drove M.L.H. home. When they arrived at M.L.H.'s home, Johnson told her to quit crying.

Johnson's testimony describes a consensual sexual encounter. He testified that M.L.H. had kissed him on the lips prior to that night and that during the drive to M.L.H.'s house, he gave her a kiss and she "French" kissed him. According to his testimony, Johnson then parked the car, things progressed, and M.L.H. helped him take one of her shoes off and her jeans off one of the legs. Johnson stated that he performed oral sex on her and that then, they had consensual sexual intercourse. He also testified that during the encounter, M.L.H. was giggling, did not say no or stop, and did not try to hit, push, or kick him. Johnson stated that he stopped having intercourse with her when she began to cry because she was afraid she would get pregnant. M.L.H. denies that this is how the incident occurred.

Johnson delivered M.L.H. to her house. When M.L.H. entered her home, her mother was still up. The mother testified that while she noticed nothing unusual about her daughter's clothes or hair, she thought her daughter looked upset. M.L.H. told her mother that she was going to take a bath and go to bed, but did not tell her about what had happened with Johnson. M.L.H.'s mother testified that her daughter complained, after that night, of a stomach ache and was not eating very well.

M.L.H. did not seek medical treatment after the encounter with Johnson.

On December 23, 1995, M.L.H. visited Fielder and Johnson at their apartment, where M.L.H., Fielder, and Johnson exchanged Christmas gifts. M.L.H. then followed Fielder and Johnson in her car to a bar, where the three stayed for approximately 2 hours. M.L.H. then drove herself home. On December 26, M.L.H. told a few friends, including Fielder, about the incident that had occurred with Johnson. She then reported it to the police and also informed her mother about what had happened with Johnson.

On December 26, 1995, when M.L.H. told Fielder about the incident, Fielder moved out of the apartment she shared with Johnson. However, she moved back in after a while, and Johnson was still her boyfriend at the time of the trial.

Johnson and Fielder both testified that when Johnson arrived back at his and Fielder's apartment, he told Fielder that he and M.L.H. had consensual sex. However, when Fielder was interviewed by police several days after the incident between M.L.H. and Johnson, she stated that when Johnson returned home, he told her that nothing had happened.

At Johnson's trial, the prosecution asked M.L.H. if she and Wolz had had sexual intercourse during their relationship, in an apparent foundational effort to show that M.L.H. knew what sexual intercourse was and that thus, she understood and could testify that the incident with Johnson involved sexual intercourse. Johnson attempted to cross-examine M.L.H. further regarding her sexual relationship with Wolz. The prosecution objected, relying on Nebraska's rape shield law, Neb. Rev. Stat. § 28-321 (Reissue 1995). The district court sustained the objection because Johnson had not given the required statutory 15 days' notice concerning this line of inquiry and because such evidence was irrelevant.

Johnson thereafter made an offer of proof. Johnson intended to question M.L.H. about an incident that allegedly occurred while she was dating Wolz. Johnson alleges that while M.L.H. and Wolz were having sexual intercourse, they called Johnson and Fielder into the room to watch them. Johnson asserts that he should have been allowed to cross-examine M.L.H. about this

incident to show that M.L.H.'s testimony that she felt uncomfortable when Johnson walked into the bathroom in Kansas City while she was taking a shower was untrue.

## ASSIGNMENTS OF ERROR

Johnson assigns five errors. The district court (1) erred in failing to grant Johnson's motion for a directed verdict at the close of all the evidence, (2) erred in failing to grant his motion for a new trial because the verdict entered is contrary to law, (3) abused its discretion in refusing to place him on probation, (4) abused its discretion in imposing a sentence which was excessive and disproportionate to the severity of the offense when considered with his background and prior record, and (5) erred in failing to allow him to fully cross-examine and confront the witnesses against him.

## ANALYSIS

*Denial of Motion for Directed Verdict.*

Johnson first argues that his motion for a directed verdict at the close of all the evidence should have been granted by the trial court.

▪ Whether a trial court should have granted a motion for directed verdict at the close of the State's case is a question of law. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998); *State v. McBride, supra.*

▪ Regardless of whether evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as failure to direct a verdict, insufficiency of evidence, or failure to prove a prima facie case, the standard of review is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586

N.W.2d 641 (1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998).

A directed verdict in a criminal case is proper only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character and lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. McBride, supra*; *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law. *State v. Hirsch, supra*.

The crime of first degree sexual assault requires proof that the defendant subjected the victim to sexual penetration and overcame the victim by force; threat of force, express or implied; coercion; or deception or knew that the victim was mentally or physically incapable of resisting. Neb. Rev. Stat. § 28-319 (Cum. Supp. 1994).

It is clear from the record that the trial court found the evidence sufficient to submit the case to the jury. Johnson admitted to sexual penetration, and M.L.H. testified as to force used by Johnson to accomplish penetration. There was also ample testimony as to M.L.H.'s lack of consent. Although Johnson said that this was consensual sex, the credibility of witnesses and conflicts in the evidence is for the jury, as trier of fact, to determine. See *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996).

There was neither a failure of proof of an element of the crime charged nor evidence so doubtful in character and lacking in probative value, that a finding of guilt could not be sustained. See, *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991); *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991). The prosecution's evidence, if believed, was obviously sufficient to sustain the conviction. There was no error in denying the motion for a directed verdict.

*Denial of Motion for New Trial on Evidentiary Grounds.*

Johnson next contends that he is entitled to a new trial because the verdict was contrary to law. Specifically, Johnson

argues that he was "denied his right to fully cross-examine the victim" and therefore "has been denied his right of confrontation and should receive a new trial." Brief for appellant at 7.

■ Where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997) (under rape shield law, admissibility of prior sexual behavior of victim is primarily one of relevance); *Main Street Movies v. Wellman*, 251 Neb. 367, 557 N.W.2d 641 (1997). The admissibility of evidence is reviewed for an abuse of discretion where, as here, the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *State v. Earl, supra*; *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

Johnson asserts that the district court erred in excluding certain evidence of M.L.H.'s past sexual behavior under Nebraska's rape shield law, codified at § 28-321. He argues that his right to cross-examine M.L.H. was unfairly limited by the district court as to matters going to the credibility of M.L.H.'s testimony on direct examination.

Section 28-321 provides in part:

(1) If the defendant intends to offer evidence of specific instances of the victim's past sexual behavior, notice of such intention shall be given to the prosecuting attorney and filed with the court not later than fifteen days before trial.

(2) Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior.

The district court found that since Johnson did not give the required 15 days' notice of the proffered evidence, he could not introduce such testimony at trial, even if elicited through cross-examination. Johnson argued that the notice provision in § 28-321 did not apply, as he did not learn of this until during the trial and because he was not offering the evidence, but,

rather, only cross-examining M.L.H. regarding a matter already inquired into by the prosecution.

Section 28-321 further provides, in pertinent part, as follows:

Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

In *State v. Earl*, 252 Neb. 127, 134, 560 N.W.2d 491, 496 (1997), the Nebraska Supreme Court wrote:

Under this statute, evidence of a complainant's prior sexual behavior is inadmissible unless it tends to prove one of the two explicitly stated exceptions; i.e., source of physical evidence, or consent. The legislative purpose and history of the rape shield law is amply discussed in *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), and *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). Stated briefly, the statutory purpose was to protect sexual assault victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. See *id*.

Johnson's stated purpose for offering such evidence was to rebut certain testimony of M.L.H., not to establish the source of physical evidence or to prove M.L.H.'s consent. During direct examination of M.L.H., the prosecutor asked M.L.H. if she and Wolz had sexual intercourse during their relationship, in an apparent effort to show that M.L.H. knew what sexual intercourse was, and that the incident with Johnson was sexual intercourse. Johnson's offer of proof was that he intended to question

M.L.H. about an alleged incident in which M.L.H. and Wolz were having sexual intercourse and called Johnson and Fielder into the room to watch them. Johnson asserts that he should have been allowed to cross-examine M.L.H. about this incident to show that M.L.H.'s testimony that she felt uncomfortable when Johnson walked into the bathroom in Kansas City while she was taking a shower was untrue. Thus, since the stated purpose for the evidence was not to show another source of physical evidence or that M.L.H. consented on the night in question, the district court properly disallowed such questioning of the victim. The district court's ruling was consistent with the restrictive language and intent of § 28-321.

Nonetheless, Johnson contends that in the circumstances of a particular case, evidence of a victim's prior sexual behavior may be so relevant and probative that the defendant's right to present it is constitutionally protected, notwithstanding the rape shield law.

The right of a person accused of a crime to confront the witnesses against him or her is a fundamental right guaranteed by the 6th Amendment to the U.S. Constitution, as incorporated in the 14th Amendment, as well as by article I, § 11, of the Nebraska Constitution. See, *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State v. Johnson*, 255 Neb. 865, 587 N.W.2d 546 (1998); *State v. Privat*, 251 Neb. 233, 556 N.W.2d 29 (1996); *State v. Hartmann*, 239 Neb. 300, 476 N.W.2d 209 (1991). The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor . . . ."

In *State v. Thaden*, 210 Neb. 622, 627, 316 N.W.2d 317, 321 (1982), quoting *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), the Nebraska Supreme Court noted that the right of cross-examination " 'is implicit in the constitutional right of confrontation' " and is " ' "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." ' " Further, the court recognized that " '[t]he right of a defendant to engage in a searching and wide-ranging cross-examination is an essential requirement for a fair trial.' " *State v. Thaden*, 210 Neb. at 627, 316 N.W.2d

at 321, quoting *United States v. Jones*, 557 F.2d 1237 (8th Cir. 1977).

In *State v. Privat*, 251 Neb. at 248, 556 N.W.2d at 38, the Nebraska Supreme Court held that

> an accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been permitted to pursue his or her proposed line of cross-examination.

The cross-examination which Johnson could not perform goes to M.L.H.'s credibility, not to any bias on her part. However, the constitutionality of the rape shield law has been upheld. In *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986), the court found that the almost total prohibition on the introduction of evidence of the victim's prior sexual behavior does not unconstitutionally restrict a defendant's rights. Implicit in that holding is the notion that the rape shield law does not unconstitutionally interfere with the defendant's right of confrontation of the witnesses against the defendant. See, also, *Michigan v. Lucas*, 500 U.S. 145, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991) (holding that defendant's right to present testimony may have to bow to other legitimate interests in criminal trial process in court's rejection of challenge to Michigan rape shield law). Thus, Johnson's argument lacks merit.

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997); *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). An abuse of discretion takes place when the court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998). As previously discussed, the district court did not err by limiting the scope of Johnson's cross-examination of M.L.H. regarding her

prior sexual behavior. The evidence from the offer of proof was not so "relevant and probative" that any constitutional right to prevent it, which has not yet been determined to be part of the Sixth Amendment, would be triggered even if such right existed. See *State v. Sanchez*, 257 Neb. 291, 597 N.W.2d 361 (1999). Thus, the trial court did not abuse its discretion in denying Johnson's motion for new trial.

### Determination of Sentence.

We now consider Johnson's argument that we should reduce his sentence. A sentence within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999). Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, and a judgment denying probation will be upheld unless the trial court abuses its discretion. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992); *State v. Alford*, 6 Neb. App. 969, 578 N.W.2d 885 (1998). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hill, supra*.

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances of the defendant's life. *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999); *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. White, supra*; *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

Johnson is a 46-year-old divorced Caucasian male with two children, ages 19 and 15. He has a high school diploma and has an associate's degree from a community college in carpentry. At the time of sentencing, he was employed by a construction company earning $8.85 per hour. Johnson has a lengthy criminal record dating back to 1968, including such offenses as larceny,

burglary, forgery, possession of marijuana, assault, shoplifting, and driving under the influence. In addition, he spent 2 years in the Nebraska Penal and Correctional Complex for carrying a concealed weapon. Most recently, in 1996, Johnson served 60 days in jail and received 3 years' probation for the unlawful distribution of a controlled substance.

Pursuant to § 28-319, first degree sexual assault is a Class II felony, which carries with it a penalty of a 1-year minimum and 50-year maximum sentence of imprisonment. The district court's sentence in the instant case of not less than 3 nor more than 5 years' imprisonment was well within the range of possible penalties for a Class II felony. The trial court did not abuse its discretion in sentencing Johnson.

AFFIRMED.