STATE OF NEBRASKA, APPELLEE,
V. ROBERT R. JOHNSON, APPELLANT.
609 N.W.2d 48

Filed April 11, 2000.    No. A-98-1203.

Arthur C. Toogood, Adams County Public Defender, for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

Robert R. Johnson was charged by information with first degree sexual assault to which he entered a plea of not guilty. After a jury trial in August 1998, in the Adams County District Court, Johnson was convicted and sentenced to not less than 3 nor more than 5 years' imprisonment. Johnson appealed to this court, and we affirmed his conviction in *State v. Johnson*, 8 Neb. App. 762, 602 N.W.2d 253 (1999). Johnson filed a motion for rehearing, which we have granted, and now we decide the appeal anew. Therefore, we withdraw our previous opinion, which is superseded in its entirety by this opinion.

## BACKGROUND

Johnson was charged by an information filed in the Adams County District Court with first degree sexual assault of M.L.H. on or between December 22 and 23, 1995.

M.L.H. first became acquainted with Johnson in August 1994 when she was dating Dave Wolz, Johnson's friend and room-mate. M.L.H. dated Wolz for about 6 months and socialized with Johnson and his girl friend, Kelly Fielder, during this time period. Fielder was M.L.H.'s best friend at that time. After M.L.H. and Wolz stopped dating, M.L.H. continued to socialize with Johnson and Fielder.

M.L.H., Johnson, and Fielder took a trip to Kansas City, Missouri, in July 1995. The three shared a hotel room, with Fielder and Johnson sharing one bed and M.L.H. in another. On this trip, M.L.H. testified that Johnson unlocked the bathroom door while she was taking a shower, which made her uncomfortable. Johnson made the suggestion that M.L.H., Fielder, and he should have a "threesome," to which M.L.H. said no and that she did not want to do anything with him of such a nature.

Both M.L.H. and Johnson testified that Johnson flirted with M.L.H. and repeatedly asked her to have sex with him, and that she always said no. M.L.H. stated that she was not attracted to

Johnson and testified that Johnson's advances got to the point that they did not bother her.

On December 22, 1995, Fielder and Johnson picked M.L.H. up in Johnson's car and the three went to a bar together. At the bar, the three danced and had drinks. M.L.H. drank five to six drinks and testified that Johnson probably had more. At about 11:30 p.m., the three left and returned to Johnson and Fielder's apartment. After staying there for approximately 10 minutes, M.L.H. stated that she did not feel well and wanted to go home. Johnson told Fielder that he would take M.L.H. home and that Fielder should stay there at the apartment. Johnson and M.L.H. then got in Johnson's car to go to M.L.H.'s home, where she lived with her parents, which was approximately four blocks away. From this point forward, the testimony is in conflict.

M.L.H. testified that on the way to her house, Johnson did not turn when she expected him to, but, rather, drove another block, turned left, and parked the car. At this time, Johnson turned toward M.L.H., grabbed her left leg, and pulled it over to the side between the back of the seat and his body. M.L.H.'s head was caught by the door. She told Johnson that she wanted to go home, but he did not let her leave. Johnson unbuttoned and pulled down her pants, pulled her shirt and bra up, lifted her right leg, and performed oral sex on her. M.L.H. tried to push him away, but could not because her legs were caught, as was her head. Johnson then had intercourse with M.L.H. and stopped after a few minutes. M.L.H. stated that Johnson stopped "because he said he didn't want to get me pregnant." M.L.H. testified that she did not want to have intercourse with Johnson and communicated that to him by telling him no during the incident. She stated at trial that "[d]uring the whole thing I was saying no and trying to push him off, and I was crying and said I wanted to go home." Afterward, Johnson pulled up his pants and told M.L.H. to put her clothes back on. Johnson then drove M.L.H. home. When they arrived at M.L.H.'s home, Johnson told her to quit crying.

Johnson related that they had a consensual sexual encounter. He testified that M.L.H. had kissed him on the lips prior to that night and that during the drive to M.L.H.'s house, he gave her a kiss and she "French" kissed him. Johnson then drove across the

street and parked the car. According to his testimony, things progressed, and M.L.H. helped him take one of her shoes off and one of the legs of her jeans off. Johnson stated that he performed oral sex on her and that then, they had consensual sexual intercourse. He also testified that during the encounter, M.L.H. was giggling, did not say no or stop, and did not try to hit, push, or kick him. Johnson stated that he stopped having intercourse with her when she began to cry because she was afraid she would get pregnant. M.L.H. denies Johnson's version.

Johnson delivered M.L.H. to her house. When M.L.H. entered her home, her mother was still up. The mother testified that while she noticed nothing unusual about her daughter's clothes or hair, she thought her daughter looked upset. M.L.H. told her mother that she was going to take a bath and go to bed, but did not tell her about what had happened with Johnson. M.L.H.'s mother testified that her daughter complained, after that night, of a stomach ache and was not eating very well. M.L.H. did not seek medical treatment after the encounter with Johnson.

On December 23, 1995, M.L.H. visited Fielder and Johnson at their apartment, where M.L.H., Fielder, and Johnson exchanged Christmas gifts. M.L.H. then followed Fielder and Johnson in her car to a bar, where the three stayed for approximately 2 hours. M.L.H. then drove herself home. On December 26, M.L.H. told a few friends, including Fielder, about the incident that had occurred with Johnson. She then reported it to the police and also informed her mother about what had happened with Johnson.

On December 26, 1995, when M.L.H. told Fielder about the incident, Fielder moved out of the apartment she shared with Johnson. However, she moved back in after a while, and Johnson was still her boyfriend at the time of the trial.

Johnson and Fielder both testified that when Johnson arrived back at his and Fielder's apartment, he told Fielder that he and M.L.H. had had consensual sex. However, when Fielder was interviewed by police several days after the incident between M.L.H. and Johnson, she stated that when Johnson returned home he told her that nothing had happened. During the trial, Johnson's attorney attempted to cross-examine M.L.H. about

her sexual activity with Wolz. Objection thereto was made and sustained. We shall discuss this fully in the analysis portion of our opinion.

## ASSIGNMENTS OF ERROR

Johnson assigns five errors: The district court (1) erred in failing to grant Johnson's motion for a directed verdict at the close of all the evidence, (2) erred in failing to grant his motion for a new trial because the verdict entered is contrary to law, (3) abused its discretion in refusing to place him on probation, (4) abused its discretion in imposing a sentence which was excessive and disproportionate to the severity of the offense when considered with his background and prior record, and (5) erred in failing to allow him to fully cross-examine and confront the witnesses against him.

## ANALYSIS

*Denial of Motion for Directed Verdict.*

Johnson first argues that his motion for a directed verdict at the close of all the evidence should have been granted by the trial court.

■ Whether a trial court should have granted a motion for directed verdict at the close of the State's case is a question of law. *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998); *State v. McBride, supra.*

■ Regardless of whether evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as failure to direct a verdict, insufficiency of evidence, or failure to prove a prima facie case, the standard of review is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641

(1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Becerra*, 253 Neb. 653, 573 N.W.2d 397 (1998).

◼ A directed verdict in a criminal case is proper only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character and lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. McBride, supra*; *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994). If there is any evidence which will sustain a finding for the party against whom a motion for directed verdict is made, the case may not be decided as a matter of law. *State v. Hirsch, supra*.

◼ The crime of first degree sexual assault requires proof that the defendant subjected the victim to sexual penetration and overcame the victim by force; threat of force, express or implied; or coercion or deception, or knew that the victim was mentally or physically incapable of resisting. Neb. Rev. Stat. § 28-319 (Cum. Supp. 1994).

It is clear from the record that the trial court found the evidence sufficient to submit the case to the jury. Johnson admitted to sexual penetration, and M.L.H. testified as to force used by Johnson to accomplish penetration. There was also ample testimony as to M.L.H.'s lack of consent. Although Johnson said that this was consensual sex, the credibility of witnesses and resolution of conflicts in the evidence is for the jury to determine. See *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996).

There was neither a failure of proof of an element of the crime charged nor evidence so doubtful in character and lacking in probative value, that a finding of guilt could not be sustained. See, *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991); *State v. Thomas*, 238 Neb. 4, 468 N.W.2d 607 (1991). The prosecution's evidence, if believed, was obviously sufficient to sustain the conviction. There was no error in denying the motion for a directed verdict.

*Rape Shield Protection Versus Confrontational Clause.*

Johnson next contends that he is entitled to a new trial because the verdict was contrary to law. Johnson argues that he was "denied his right to fully cross-examine the victim" and

therefore "has been denied his right of confrontation and should receive a new trial." Brief for appellant at 7.

During Johnson's trial, the prosecution asked M.L.H. if she and Wolz had had sexual intercourse during their relationship, in an apparent foundational effort to show that M.L.H. understood what sexual intercourse was and thus could testify that the incident with Johnson involved sexual intercourse. Johnson attempted to cross-examine M.L.H. further regarding her sexual relationship with Wolz. The prosecution objected, relying on Nebraska's rape shield law, Neb. Rev. Stat. § 28-321 (Reissue 1995). The district court sustained the objection because Johnson had not given the required statutory 15 days' notice concerning this line of inquiry and because such evidence was irrelevant.

Johnson thereafter made an offer of proof. Johnson intended to question M.L.H. about an incident that allegedly occurred while she was dating Wolz. Johnson alleges that while M.L.H. and Wolz were having sexual intercourse, they called Johnson and Fielder into the room to watch them. Johnson asserts that he should have been allowed to cross-examine M.L.H. about this incident to show that M.L.H.'s testimony that she felt uncomfortable when Johnson walked into the bathroom in Kansas City while she was taking a shower was not true.

Where the statutes embodying the rules of evidence apply, the admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor involved in assessing admissibility. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997) (under rape shield law, admissibility of prior sexual behavior of victim is primarily one of relevance). The admissibility of evidence is reviewed for an abuse of discretion where, as here, the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Id.*; *State v. McBride*, 250 Neb. 636, 550 N.W.2d 659 (1996).

Johnson argues that his right to cross-examine M.L.H. was unfairly limited by the district court under Nebraska's rape shield law, § 28-321, as to matters going to the credibility of M.L.H.'s direct testimony.

Section 28-321 provides in part:

(1) If the defendant intends to offer evidence of specific instances of the victim's past sexual behavior, notice of

such intention shall be given to the prosecuting attorney and filed with the court not later than fifteen days before trial.

(2) Upon motion to the court by either party in a prosecution in a case of sexual assault, an in camera hearing shall be conducted in the presence of the judge, under guidelines established by the judge, to determine the relevance of evidence of the victim's or the defendant's past sexual behavior.

The district court found that since Johnson did not give the required 15 days' notice of the proffered evidence, he could not introduce such testimony at trial, even if elicited through cross-examination. Johnson argued that the notice provision in § 28-321 did not apply, as he did not learn of M.L.H.'s Kansas City trip testimony until during the trial. Additionally, he was only cross-examining M.L.H. regarding a matter already inquired into by the prosecution, i.e., her sexual activities with Wolz. Because we have concluded that we must analyze Johnson's claim on constitutional grounds, under the Confrontation Clause, we do not think the 15-day statutory notice requirement is dispositive of the issue. Thus, we turn to the substantive question of the exclusion of this evidence under the rape shield law.

Section 28-321 further provides, in pertinent part, as follows:

Evidence of a victim's past sexual behavior shall not be admissible unless such evidence is: (a) Evidence of past sexual behavior with persons other than the defendant, offered by the defendant upon the issue whether the defendant was or was not, with respect to the victim, the source of any physical evidence, including but not limited to, semen, injury, blood, saliva, and hair; or (b) evidence of past sexual behavior with the defendant when such evidence is offered by the defendant on the issue of whether the victim consented to the sexual behavior upon which the sexual assault is alleged if it is first established to the court that such activity shows such a relation to the conduct involved in the case and tends to establish a pattern of conduct or behavior on the part of the victim as to be relevant to the issue of consent.

In *State v. Earl*, 252 Neb. 127, 134, 560 N.W.2d 491, 496 (1997), the Nebraska Supreme Court wrote:

> Under this statute, evidence of a complainant's prior sexual behavior is inadmissible unless it tends to prove one of the two explicitly stated exceptions; i.e., source of physical evidence, or consent. The legislative purpose and history of the rape shield law is amply discussed in *State v. Hopkins*, 221 Neb. 367, 377 N.W.2d 110 (1985), and *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986). Stated briefly, the statutory purpose was to protect sexual assault victims from grueling cross-examination concerning their previous sexual behavior, which often elicited evidence of questionable relevance to the case being tried. See *id.*

Johnson's stated purpose for offering the evidence at issue was to rebut the testimony about being "uncomfortable" during the Kansas City trip. Johnson argues that he was entitled to cross-examine M.L.H. about her sexual conduct with Wolz in front of Johnson to show that her testimony about the Kansas City trip was not credible. Obviously, the stated purpose of the cross-examination was not to show another source of physical evidence or that M.L.H. consented on the night in question. The district court's exclusion of the proposed cross-examination was consistent with the restrictive intent of § 28-321, because the evidence was not offered for either of the two permitted purposes. If our only concern was the rape shield law, our analysis would be complete.

However, Johnson contends that sometimes evidence of a victim's prior sexual behavior may be so relevant and probative that the defendant's right to present it is constitutionally protected, notwithstanding the rape shield law. Johnson relies on the recent case of *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999), which was decided after our earlier opinion in this matter. We granted the motion for rehearing to reconsider this argument in light of the Supreme Court's decision in *Lessley.*

In *State v. Thaden*, 210 Neb. 622, 627, 316 N.W.2d 317, 321 (1982), quoting *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), the Nebraska Supreme Court noted that the right of cross-examination " 'is implicit in the constitutional right of confrontation' " and is " ' "an essential

and fundamental requirement for the kind of fair trial which is this country's constitutional goal." ' " " '[T]he right of a defendant to engage in a searching and wide-ranging cross-examination is an essential requirement for a fair trial.' " *Thaden*, 210 Neb. at 627, 316 N.W.2d at 321, quoting *United States v. Jones*, 557 F.2d 1237 (8th Cir. 1977).

In *State v. Privat*, 251 Neb. 233, 248, 556 N.W.2d 29, 38 (1996), the Nebraska Supreme Court held:

> [A]n accused's constitutional right of confrontation is violated when either (1) he or she is absolutely prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, or (2) a reasonable jury would have received a significantly different impression of the witness' credibility had counsel been permitted to pursue his or her proposed line of cross-examination.

Johnson's proposed cross-examination, if it means anything, goes only to M.L.H.'s credibility, not to any bias on her part. But the rape shield law obviously places limits on cross-examination going to the victim's credibility when the subject is the victim's sexual conduct with someone other than the defendant. In *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986), the constitutionality of the rape shield law was upheld. See, also, *Michigan v. Lucas*, 500 U.S. 145, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991) (Court rejected challenge to Michigan rape shield law, holding that defendant's right to present testimony may have to bow to other legitimate interests in criminal trial process).

In *State v. Lessley, supra*, the Nebraska Supreme Court dealt with the admissibility of evidence seemingly barred by the rape shield law. Lessley argued that the State "opened the door" to otherwise inadmissible evidence by first stating in opening arguments that the victim was a lesbian, then eliciting testimony from the victim that she was a lesbian, and asking the victim detailed questions regarding whether she told a coworker certain information about her past sexual behavior, specifically, whether she engaged in anal intercourse with men so as to avoid getting pregnant. The victim denied making such a statement. Lessley wanted to adduce rebuttal evidence which he claimed would directly contradict the victim's denial that she told a coworker

that she engaged in anal intercourse with men. The trial court prevented Lessley from presenting this evidence, citing the rape shield law. The Nebraska Supreme Court found that the circumstances of the case were such that the accused's constitutional rights to confrontation required the admission of the excluded evidence concerning the victim's prior sexual behavior, although it would be inadmissible under the rape shield law. The court found:

> The only issue in this case was whether the encounter between M.B. and Lessley was consensual. Whether intended by the State or not, M.B.'s testimony on direct examination regarding her sexual preference and experience permitted the jury to draw an inference that she did not consent to sexual relations with Lessley. The evidence proffered by the defense would have made this critical inference less probable. The trial court's exclusion of this evidence was error because it materially impaired Lessley's Sixth Amendment right to confront his accuser on the dispositive issue of consent.

*State v. Lessley,* 257 Neb. 903, 911, 601 N.W.2d 521, 527-28 (1999).

In *Lessley,* when the State introduced evidence that the victim was a lesbian, Lessley's defense of consensual sex with her was attacked head-on via a "preemptive strike." In short, the State's message to the jury from its evidence was: "Reject the defendant's consent defense because lesbians do not have consensual sex with men, and the victim is a lesbian." It is clear that in *Lessley,* the prosecution's evidence was a direct attack on the defense of consent and that for better or worse, it also put the nature of the victim's sexual activities in issue. Therefore, Lessley was entitled under the Confrontation Clause to respond to the State's preemptive strike on his consent defense by exploring whether the victim engaged in sex with men, despite being a lesbian.

We see the *Lessley* decision as being driven by the unique circumstances of that trial rather than as a weakening of the rape shield law. In other words, if the prosecution tries a case in a way that puts the victim's sexuality or sexual habits in issue and such sexuality or sexual habits are relevant because they make a

material fact more or less probable, then the defendant has a constitutional right under the Confrontation Clause to respond, notwithstanding the rape shield law. This, in our view, is what happened in *Lessley*. In short, the prosecution's tactics dictated the result in *Lessley*, but the Supreme Court's decision is by no means a blank check for defendants to begin rummaging in the sexual past of victims as happened before the rape shield law.

After *Lessley*, the question for us in the instant case is whether the excluded cross-examination either is so directly related to Johnson's defense or bears so strongly on the believability of M.L.H.'s testimony about the elements of the crime that the Confrontation Clause must override the restrictions of the rape shield law, which would otherwise clearly exclude this evidence. Our answer is in the negative, and therefore, we hold that the rape shield law still excludes this evidence because the disputed evidence here and in *Lessley* are markedly dissimilar in their materiality and relevance. Here, the proposed evidence only goes to credibility, which is deemed a collateral matter. See *State v. Bittner*, 188 Neb. 298, 196 N.W.2d 186 (1972) (trial court did not abuse its discretion in refusing to permit impeachment of witness' credibility by showing that she had testified falsely at preliminary hearing in denying she was prostitute, since witness' prostitution was collateral matter and not substantive proof of any fact relative to breaking and entering charge against defendant). The test for whether a fact inquired of in cross-examination in criminal proceedings is collateral— would the cross-examining party be entitled to prove it as part of his or her case—is set forth in *State v. Williams*, 219 Neb. 587, 365 N.W.2d 414 (1985). In *Lessley*, the State's evidence made the evidence of the victim's sexual habits relevant and material, but here, whether M.L.H. was or was not "uncomfortable" in Kansas City is collateral and greatly attenuated from whether at some point in the future she consented to sex with Johnson.

Moreover, while the State in the instant case did inquire about whether M.L.H. had sexual intercourse with Wolz, that question did not open the proverbial "door" in quite the same way that the prosecution kicked the "door" off of its hinges with the testimony from the victim that she was a lesbian in *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999). Here, the ill-conceived

question merely stated the obvious—M.L.H. understood what sexual intercourse was.

Johnson's evidence that M.L.H. and her boyfriend called Johnson and his girl friend into the bedroom to watch them have sex allegedly impeaches M.L.H.'s assertion that she felt "uncomfortable" when Johnson entered the hotel bathroom while she was in the shower. The two situations are not so closely tied to each other, and to the overall question of M.L.H.'s credibility, that the constitutional guarantee of the Confrontation Clause overrides the protection that the Legislature has given M.L.H. through the rape shield law. The cross-examination does not address M.L.H.'s consent to have sex with Johnson, nor does it so directly impact and relate to M.L.H.'s credibility that it must be admitted. In the words of *State v. Privat*, 251 Neb. 233, 248, 556 N.W.2d 29, 38 (1996), the cross-examination would not give a reasonable jury a "significantly different impression of [M.L.H.'s] credibility" if Johnson had been allowed to pursue this line of questioning. In *State v. Earl*, 252 Neb. 127, 135, 560 N.W.2d 491, 497 (1997), the court said that rejected evidence of the victim's "prior sexual behavior [was not] so relevant and probative that [the defendant's] constitutional right to present it would be triggered." The proposed cross-examination here is not so probative and relevant on the collateral matter of M.L.H.'s credibility about the Kansas City hotel incident that the Constitution requires that it be admitted. *Lessley* itself notes that matters of credibility are viewed from a different perspective. In *Lessley*, the court quoted approvingly from *State v. Williams*, 21 Ohio St. 3d 33, 487 N.E.2d 560 (1986):

> "The contested issue in this case is *consent* . . . . The victim testified on direct examination that she *never* consents to sex with men. The testimony proffered by [defendant] directly refutes this contention. [T]his evidence is submitted for more than mere impeachment of a witness' credibility. . . . [T]he proffered evidence has a more important purpose, which is to negate the implied establishment of an element of the crime charged."

257 Neb. at 910, 601 N.W.2d at 527.

Even after *Lessley*, the exclusion of Johnson's proffered evidence to impeach a small portion of M.L.H.'s testimony, regarding her level of comfort around Johnson in the Kansas City hotel, was proper. The exclusion of such evidence does not rise to the level of a deprivation of constitutional rights, as we do not believe that a critical inference regarding an element of the crime, namely consent, was implicated by the testimony about the Kansas City trip and the victim's "comfort level" on that occasion.

The excluded evidence does not relate to whether intercourse was consensual in the same way and to the same degree as the suggestion that "lesbians do not have consensual sex with men" bears upon and refutes a defense of consent when the victim is a lesbian. *Lessley* involves a direct correlation between the excluded evidence and consent, whereas here, the excluded evidence bears only on M.L.H.'s credibility in a peripheral and collateral matter: the Kansas City incident, which does not bear upon the issue of consent on the night in question.

The rape shield law is designed to protect people from being "assaulted" in the courtroom by their sexual history. We believe that its philosophical underpinnings are that consent to sex with one person is not consent to sex with all people, nor is consent on one occasion consent for all occasions. The rape shield law seeks to bring those notions into our rules of evidence by restricting a defendant's examination of a victim's sexual history. While the Confrontation Clause may trump the rape shield law in some compelling circumstances, as in *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999), we should not lightly weaken the protections of the rape shield law by allowing exploration of a person's sexual history when the connection between that history and the elements of the crime is illusory and attenuated, as is true here.

Therefore, while we granted a rehearing so that we could reconsider our decision in light of *Lessley*, we hold that *Lessley* does not require a different result and that the proposed cross-examination of M.L.H.'s prior sexual conduct was properly excluded.

*Denial of Johnson's Motion for New Trial.*

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is

shown, the trial court's determination will not be disturbed. *State v. Jackson*, 255 Neb. 68, 582 N.W.2d 317 (1998); *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998); *State v. Kula*, 252 Neb. 471, 562 N.W.2d 717 (1997); *State v. Severin*, 250 Neb. 841, 553 N.W.2d 452 (1996). An abuse of discretion takes place when the court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998). As previously discussed, the district court did not err by limiting the scope of Johnson's cross-examination of M.L.H. regarding her prior sexual behavior. Thus, the trial court did not abuse its discretion in denying Johnson's motion for new trial.

*Determination of Sentence.*

We now consider Johnson's argument that we should reduce his sentence. A sentence within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Torres*, 256 Neb. 380, 590 N.W.2d 184 (1999). Whether the sentence imposed is probation or incarceration is a matter within the discretion of the trial court, and a judgment denying probation will be upheld unless the trial court abuses its discretion. *State v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992); *State v. Alford*, 6 Neb. App. 969, 578 N.W.2d 885 (1998). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *State v. Hill, supra.*

The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances of the defendant's life. *State v. White*, 256 Neb. 536, 590 N.W.2d 863 (1999); *State v. Harrison*, 255 Neb. 990, 588 N.W.2d 556 (1999). In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. White, supra*; *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

Johnson is a 46-year-old divorced male with two children, ages 19 and 15. He has a high school diploma and has an associate's degree in carpentry from a community college. At the time of sentencing, he was employed by a construction company earning $8.85 per hour. Johnson has a lengthy criminal record dating back to 1968, including such offenses as larceny, burglary, forgery, possession of marijuana, assault, shoplifting, and driving under the influence. In addition, he spent 2 years in the Nebraska Penal and Correctional Complex for carrying a concealed weapon. Most recently, in 1996, Johnson served 60 days in jail and received 3 years' probation for the unlawful distribution of a controlled substance.

Pursuant to § 28-319, first degree sexual assault is a Class II felony, which carries with it a penalty of a 1-year minimum and 50-year maximum sentence of imprisonment. The district court's sentence in the instant case of not less than 3 nor more than 5 years' imprisonment was well within the range of possible penalties for a Class II felony. The trial court did not abuse its discretion in sentencing Johnson.

AFFIRMED.