Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/31/2017 09:08 AM CST

State of Nebraska, appellee, v. Frederick E. McSwine,
also known as Frederick E. Johnson, appellant.

___ N.W.2d ___

Filed January 31, 2017.    No. A-13-887.

1. **Rules of Evidence.** In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion.

3. **Constitutional Law: Criminal Law: Sexual Misconduct: Evidence.** Under Nebraska's rape shield statute, Neb. Rev. Stat. § 27-412(2)(a) (Reissue 2016), evidence of a victim's prior sexual behavior or sexual predisposition is not admissible in a criminal case except under limited circumstances, including when the exclusion of the evidence would violate the constitutional rights of the accused.

4. **Sexual Misconduct: Evidence: Appeal and Error.** A court does not err in excluding evidence about a victim's sexual history prior to an assault when the State does not open the door to such evidence, when the evidence does not directly relate to the issue of consent, and when the evidence would not give the jury a significantly different impression of the victim's credibility.

5. **Motions for Mistrial: Juror Misconduct: Appeal and Error.** When a defendant moves for a mistrial based on juror misconduct, an appellate court will review the trial court's determinations of witness credibility and historical fact for clear error and review de novo its ultimate determination whether the defendant was prejudiced by juror misconduct.

6. **Criminal Law: Juror Misconduct: Proof.** A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance

of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial.

7. **Criminal Law: Juror Misconduct: Presumptions: Proof.** In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome.

8. **Juror Misconduct: Proof.** Extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if (1) the material or information relates to an issue submitted to the jury and (2) there is a reasonable possibility that it affected the jury's verdict to the challenger's prejudice.

9. **Juror Misconduct.** Whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing reasonable inferences as to the effect of the extraneous information on an average juror.

10. **New Trial: Appeal and Error.** While any one of several errors may not, in and of itself, constitute prejudicial error warranting a reversal, if all of the errors in the aggregate establish that the defendant did not receive a fair trial, a new trial must be granted.

11. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

12. \_\_\_\_: \_\_\_\_. To show prejudice under the prejudice component of the *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different.

13. **Effectiveness of Counsel: Presumptions.** When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

14. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** Trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Mark E. Rappl for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Inbody and Pirtle, Judges.

Per Curiam.

## I. INTRODUCTION

Frederick E. McSwine, also known as Frederick E. Johnson, was convicted by a jury of terroristic threats, kidnapping, first degree sexual assault, and use of a deadly weapon to commit a felony. He was sentenced to a total of 57 to 85 years' imprisonment. We previously found that, during the trial, the State committed prosecutorial misconduct in its closing argument and that such misconduct amounted to plain error. See *State v. McSwine*, 22 Neb. App. 791, 860 N.W.2d 776 (2015). We also found that McSwine's trial counsel was ineffective when he did not raise a timely objection to the State's closing argument. *Id*. As a result of these findings, we reversed McSwine's convictions. *Id*. The Nebraska Supreme Court granted further review and reversed our decision, finding that the State did not commit prosecutorial misconduct in its closing argument and that because there was no misconduct, McSwine's trial counsel was not ineffective when he failed to object to the State's closing argument. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016). The Supreme Court remanded the cause to this court for us to consider and decide the other assignments of error that we had not addressed because of the result we reached in our first decision. Thus, the matter is now before us for consideration of McSwine's remaining assignments of error.

The remaining assignments of error include McSwine's assertions that the district court erred in excluding certain evidence about the victim's prior sexual experiences pursuant to Neb. Rev. Stat. § 27-412 (Reissue 2016) and in failing to order a mistrial after an issue of juror misconduct was brought to the court's attention. McSwine also asserts that he received

ineffective assistance of trial counsel in a variety of respects. For the reasons set forth herein, we affirm.

## II. BACKGROUND

The following summary of the circumstances surrounding McSwine's convictions is taken from our original opinion. See *State v. McSwine*, 22 Neb. App. 791, 860 N.W.2d 776 (2015). Additional facts regarding the remaining assignments of error will be discussed as necessary in the analysis section below.

The State filed a criminal complaint charging McSwine with terroristic threats, kidnapping, first degree sexual assault, and use of a weapon to commit a felony. The charges against McSwine stem from an incident which occurred between McSwine and C.S. in October 2012. McSwine and C.S. knew each other prior to October 2012 because McSwine had been employed at a gas station that C.S. had frequented. However, the extent of the relationship was disputed at trial.

Evidence adduced by the State established that on the morning of October 13, 2012, McSwine knocked on the door to C.S.' apartment and asked if he could come in the apartment and use the bathroom. This was not the first occasion that McSwine had come to C.S.' apartment and asked to use the bathroom. A few weeks prior to the day in question, McSwine had appeared on C.S.' doorstep with a similar request. On that day, C.S., who was entertaining friends, let him in the apartment. McSwine then left C.S.' apartment immediately after going into the bathroom.

On October 13, 2012, when McSwine again appeared on C.S.' doorstep requesting to use her bathroom, the only other person in her apartment was her boyfriend, who was asleep in her bedroom. She let McSwine into the apartment, and after he went into the bathroom, he returned to the doorway, threatened C.S. with a "sharp

instrument," and forced her from the apartment and into his vehicle. McSwine then drove to three separate, isolated areas where he forced C.S. to engage in various sexual acts. After keeping C.S. with him for approximately 5 hours, McSwine permitted C.S. to flee his car. She then ran to a nearby home where the residents called law enforcement.

McSwine disputed the evidence presented by the State. During his trial testimony, he testified that on the morning of October 13, 2012, C.S. accompanied him to his car willingly and consented to engaging in various sexual acts with him. He also testified that at some point during their encounter, C.S. became upset with him after she discovered that he had lied to her about having a charger for his cellular telephone in the car. After she became upset, she began to accuse McSwine of "using [her] for sex." She then asked to get out of his car, and McSwine stopped the car on the side of a road in order to permit her to leave. During closing arguments, McSwine's counsel argued that C.S. concocted the story about being kidnapped and sexually assaulted because she was angry with McSwine and because she did not want to get in trouble with her boyfriend or with her parents.

After hearing all of the evidence, the jury convicted McSwine of all four charges: terroristic threats, kidnapping, first degree sexual assault, and use of a weapon to commit a felony. The district court subsequently sentenced McSwine to a total of 56 years 8 months to 85 years in prison.

*Id.* at 793-94, 860 N.W.2d at 780.

## III. ASSIGNMENTS OF ERROR

McSwine raises five assignments of error in this appeal. The first assignment of error alleged that the district court erred in failing to grant McSwine's motion for a new trial due to prosecutorial misconduct during closing arguments. This assignment

of error has been conclusively resolved against McSwine by the Supreme Court. Therefore, there now remain four assignments of error for us to resolve.

First, McSwine alleges that the district court erred in failing to admit evidence of a specific instance of C.S.' sexual behavior prior to the day of the assault. Second, McSwine alleges that the district court erred in overruling his motion for a mistrial which was based on an allegation of juror misconduct. Third, McSwine alleges that the totality of all the errors committed during the proceedings below prohibited him from receiving a fair trial. Finally, McSwine alleges that he received ineffective assistance of trial counsel for a variety of reasons. We note that one of McSwine's assertions of ineffective assistance of trial counsel alleges that trial counsel failed to timely object to inappropriate statements made by the prosecutor during closing arguments. This assertion has also been conclusively resolved against McSwine by the Supreme Court. As such, we focus only on McSwine's remaining allegations of ineffective assistance of trial counsel.

## IV. ANALYSIS

### 1. Admissibility of Evidence of Specific Instance of C.S.' Past Sexual Behavior

McSwine argues that the district court abused its discretion when it refused to allow him to introduce evidence of C.S.' sexual experiences prior to October 13, 2012. Specifically, McSwine asserts that the district court should have permitted him to introduce evidence that prior to October 13, C.S. had engaged in oral sex, contrary to her testimony at trial. McSwine asserts that such evidence is directly related to the question of whether C.S. consented to the sexual contact with McSwine on October 13 and is directly related to C.S.' credibility. Upon our review, we conclude that the district court did not abuse its discretion in prohibiting McSwine from eliciting such evidence about C.S.' prior sexual experiences.

### (a) Standard of Review

[1,2] In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the rules when judicial discretion is a factor involved in determining admissibility. *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999). See, also, *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Podrazo, supra*.

### (b) Background

During its direct examination of C.S., the State questioned her regarding specific details of the assault. During this line of questioning, C.S. testified that after McSwine took her to the first isolated area, he told her to take off her clothes and he pulled his pants and underwear down around his ankles. C.S. testified that at that point, she was not sure what McSwine wanted her to do. She indicated that McSwine then told her to "put [his penis] in [her] mouth and suck on it." C.S. testified that she told McSwine that she "didn't know how" to perform oral sex. She testified that McSwine forced her to perform oral sex on him anyway and that at some point, he told her to "stop sucking on it and to finish with [her] hands, which he also had to tell [her] how to do."

C.S. also testified, upon questioning by the State, that prior to October 13, 2012, she had engaged in sexual intercourse with her boyfriend, and that the last time she had sexual intercourse was approximately a month prior to the day of the assault. She admitted that when she was initially questioned by the police, she had lied about whether she had previously had sexual intercourse. C.S. testified that she lied because her mother was with her during her initial interview with police and she did not want her mother to know that she and her boyfriend had a sexual relationship.

During the cross-examination of C.S., defense counsel questioned her further about her prior sexual experiences. Specifically, counsel asked her whether she was being truthful with McSwine when she told him that she did not know how to perform oral sex. C.S. responded that she was being truthful and that she had never engaged in oral sex prior to October 13, 2012. Defense counsel also questioned C.S. about whether she lied to police about anything other than her prior sexual experiences. C.S. indicated that initially she had not told police that her boyfriend was sleeping in her bedroom when she was abducted from her apartment. She testified that neither her parents nor her boyfriend's parents would approve of them spending the night together.

After C.S.' testimony, defense counsel made a motion to admit evidence of a specific instance of C.S.' prior sexual experience, which would contradict her trial testimony. Specifically, defense counsel wished to offer evidence that prior to October 13, 2012, C.S. had engaged in oral sex. After a hearing, the district court denied the motion, finding:

> Whether [C.S.] performed oral sex on a male prior to October 13th, 2012, has no bearing on whether, on that date, she consented to perform — and "that date" being October 13th, 2012 — she consented to perform oral sex on . . . McSwine. . . . In fact, as I noted, it would be offered to attack her credibility, and I find there has been sufficient evidence already introduced . . . on that issue, that additional evidence [about her prior sexual experiences], even if found to be credible, would be repetitive.

McSwine appeals from the district court's decision to exclude evidence that C.S. had engaged in oral sex prior to October 13, 2012.

### (c) Analysis

[3] Under Nebraska's rape shield statute, § 27-412(2)(a), evidence of a victim's prior sexual behavior or sexual

predisposition is not admissible in a criminal case except under limited circumstances, including when the exclusion of the evidence would violate the constitutional rights of the accused.

This court has previously explained the rationale for the protections provided by the rape shield statute:

> The rape shield law is designed to protect people from being "assaulted" in the courtroom by their sexual history. We believe that its philosophical underpinnings are that consent to sex with one person is not consent to sex with all people, nor is consent on one occasion consent for all occasions. The rape shield law seeks to bring those notions into our rules of evidence by restricting a defendant's examination of a victim's sexual history.

*State v. Johnson*, 9 Neb. App. 140, 153, 609 N.W.2d 48, 58 (2000). With this context in mind, we address McSwine's specific assertions.

On appeal, McSwine centers his assertions around § 27-412(2)(a)(iii). He argues that when the district court prohibited him from introducing evidence that C.S. had previously engaged in oral sex, it violated his right to confront his accuser under the Sixth Amendment to the U.S. Constitution. The Sixth Amendment provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor . . . .'" *State v. Lessley*, 257 Neb. 903, 908, 601 N.W.2d 521, 526 (1999).

Specifically, McSwine argues that evidence that C.S. had engaged in oral sex prior to October 13, 2012, was admissible because it was highly relevant to the issue of consent. McSwine asserts that if the jury believed that C.S. had never engaged in oral sex prior to the assault, it would be less likely that the jury would believe McSwine's defense that C.S. had "consent[ed] to such a sexual act" with him. See supplemental brief for appellant at 4. McSwine also argues that this evidence was highly relevant to the jury's analysis of

C.S.' credibility, because she testified during defense counsel's cross-examination that she never engaged in oral sex prior to the day of her assault. We separately address McSwine's assertions that the excluded evidence should have been admitted to demonstrate (1) consent and (2) C.S.' lack of credibility.

To support his assertion that the district court should have permitted evidence of C.S.' prior sexual experiences because it was relevant to the issue of consent, McSwine relies on the Nebraska Supreme Court's decision in *State v. Lessley, supra*. In *Lessley*, the Supreme Court found that certain evidence concerning the victim's prior sexual experiences was admissible on constitutional grounds because of a defendant's right to confront his accuser.

In that case, the victim testified, during her direct examination by the State, that she was a lesbian. Despite this evidence of the victim's sexual preferences, the trial court refused to allow the defendant to introduce evidence to contradict the victim's denial that she told a coworker that she had engaged in anal intercourse with men prior to the assault. *Id*. On appeal, the Nebraska Supreme Court ruled that the defendant's Sixth Amendment right to confront his accuser on the dispositive issue of consent required that he be allowed to explore this matter, because the "direct examination regarding [the victim's] sexual preference and experience permitted the jury to draw an inference that [as a lesbian,] she did not consent to sexual relations" with the defendant. *State v. Lessley*, 257 Neb. at 911, 601 N.W.2d at 528. Finding that the evidence the defendant wanted to offer would have made this critical inference less probable and that the State had "'opened the door'" to the victim's sexual past, the Supreme Court reversed the trial court's decision not to allow its admission. *Id*. at 912, 601 N.W.2d at 528.

Upon our review, we conclude that the facts of this case are distinguishable from those present in *State v. Lessley, supra*. First, in this case, C.S.' testimony that she had not engaged in oral sex prior to October 13, 2012, was elicited during

defense counsel's cross-examination, rather than during the State's direct examination. During its direct examination, the State merely asked C.S. if she "protest[ed]" after McSwine told her to "put [his penis] in [her] mouth and suck on it." C.S. responded that she told McSwine that she "didn't know how" to perform oral sex. While this statement could imply that C.S. had never before engaged in oral sex, it could also simply indicate that C.S. was trying to avoid performing oral sex on McSwine or trying to delay the impending assault. The State did not question C.S. further on this topic. Defense counsel, on the other hand, elicited additional information on this topic during the cross-examination of C.S. Counsel specifically asked C.S. if she was telling McSwine the truth when she said that she did not know how to perform oral sex. C.S. then testified that she had never engaged in oral sex prior to October 13.

Because C.S.' testimony that she had never engaged in oral sex prior to the assault was elicited during defense counsel's cross-examination and not during the State's direct examination, we conclude that the State did not open the door to this issue like it opened the door to the victim's sexual preferences in *State v. Lessley*, 257 Neb. 903, 601 N.W.2d 521 (1999). In *Lessley*, the State specifically elicited evidence that the victim was a lesbian. And, because the State elicited this information, the Supreme Court found that it could not thereafter "hide" behind the rape shield statute to exclude evidence which would contradict the implication that the victim would never consent to having sexual contact with a man. *Id.* at 908, 601 N.W.2d at 526. Here, defense counsel elicited testimony about the victim's sexual history and then tried to capitalize on that testimony to admit additional evidence that would ordinarily be irrelevant and prohibited by the rape shield statute. Upon our review, we conclude that the State's nominal role in eliciting evidence about C.S.' prior experiences with oral sex was not sufficient to warrant the loss of the protection of the rape shield statute.

In his brief to this court, McSwine also asserts that the State opened the door to the evidence about C.S.' prior experience with oral sex when it "introduced a large amount of evidence surrounding [C.S.'] propensity for 'pureness' and naïveté regarding sexual acts." Brief for appellant at 44. Essentially, McSwine asserts that the State made the issue of C.S.' prior sexual experience highly relevant when it admitted "a large amount of evidence" which tended to show that C.S. would not consent to having any sexual contact with McSwine. Upon our review, we conclude that, contrary to McSwine's assertions, the State did not offer a significant amount of evidence about C.S.' propensity for pureness or innocence.

As we discussed above, the State did question C.S. about whether she had ever had sexual intercourse prior to the day of the assault. She responded that she had. Then, the State questioned her about why she lied to police about this fact during her initial interview. C.S. explained that her mother was with her and that she did not want her mother to know that she and her boyfriend had a sexual relationship. While this evidence may indicate that C.S. was embarrassed or uncomfortable discussing her past sexual experiences in front of her mother, it does not necessarily portray her as pure or innocent. And, certainly, it does not portray such characteristics so significantly that it would open the door to the defense offering evidence about C.S.' prior sexual history.

In addition to finding that the State did not open the door to the excluded evidence to the extent it did so in *State v. Lessley, supra*, we also find that the excluded evidence here does not relate to whether C.S. would have consented to engaging in oral sex with McSwine in the same way and to the same degree as the suggestion in *Lessley* that "lesbians do not have consensual sex with men" bears upon and refutes a defense of consent when the victim is a lesbian. C.S. testified during the defense's cross-examination that she had not engaged in oral sex prior to October 13, 2012. She did not testify that she would never engage in oral sex. The Supreme Court's decision in *State v.*

*Lessley, supra*, was based on the direct correlation between the excluded evidence and consent. We do not find that same direct correlation present in the facts of this case. We conclude that the district court did not abuse its discretion in deciding that the evidence offered by McSwine was not highly relevant to the issue of consent such that it should be admitted despite the protections of the rape shield statute.

McSwine also asserts that the evidence that C.S. had previously engaged in oral sex was highly relevant to her credibility and that, as a result, the evidence should have been admitted on that basis. The State, relying on this court's decision in *State v. Johnson*, 9 Neb. App. 140, 609 N.W.2d 48 (2000), disagrees with McSwine's assertion.

In *State v. Johnson, supra*, we concluded that the district court's decision to exclude evidence of the victim's prior sexual conduct was proper because such evidence related only to the victim's credibility in a peripheral and collateral matter. In that case, the victim was assaulted by her former boyfriend's roommate. In the State's direct examination of the victim, it asked her whether she and her former boyfriend had engaged in sexual intercourse during their relationship. The State's question about the victim's relationship with the boyfriend was apparently meant to establish that the victim understood what sexual intercourse was and could therefore testify that the incident with the defendant involved sexual intercourse.

During the cross-examination of the victim, defense counsel attempted to question her further about her prior sexual experiences, including about a prior, specific incident when she and her boyfriend were engaged in sexual intercourse and she invited the defendant "to watch them." *Id*. at 146, 609 N.W.2d at 54. Defense counsel argued that this evidence was relevant to disprove the victim's prior testimony that she was "uncomfortable" with the defendant's interest in her and sexual advances toward her. *Id*. The district court did not permit this line of questioning, and we affirmed that decision. We stated:

The cross-examination does not address [the victim's] consent to have sex with [the defendant], nor does it so directly impact and relate to [the victim's] credibility that it must be admitted. In the words of *State v. Privat*, 251 Neb. 233, 248, 556 N.W.2d 29, 38 (1996), the cross-examination would not give a reasonable jury a "significantly different impression of [the victim's] credibility" if [the defendant] had been allowed to pursue this line of questioning. In *State v. Earl*, 252 Neb. 127, 135, 560 N.W.2d 491, 497 (1997), the court said that rejected evidence of the victim's "prior sexual behavior [was not] so relevant and probative that [the defendant's] constitutional right to present it would be triggered."

*State v. Johnson*, 9 Neb. App. at 152, 609 N.W.2d at 57-58.

In this case, we do not find that the excluded evidence concerning C.S.' prior experience with oral sex would have given the jury a significantly different impression of her credibility, nor do we conclude that the excluded evidence was so probative and relevant that the Constitution required that it be admitted. Other evidence elicited by both the State and the defense demonstrated that C.S. had a tendency to be untruthful about her past sexual experiences. Accordingly, even if the jury believed that C.S. had lied about never having performed oral sex prior to the day of the assault, such information would probably not have resulted in the jury's forming a different impression of her credibility. And, whether C.S. had previously engaged in oral sex was a collateral issue that did not have any significant bearing on whether she consented to sexual contact with McSwine on the day of the assault.

[4] The district court did not err in excluding evidence about the victim's sexual history prior to the assault when the State did not open the door to such evidence, when the evidence did not directly relate to the issue of consent, and when the evidence would not have given the jury a significantly different impression of the victim's credibility.

## 2. Juror Misconduct

Next, McSwine argues that the district court erred when it denied his motion for a mistrial after the court became aware that one of the jurors received extraneous information about the case. Upon our review of the record, we conclude that McSwine's assertion has no merit.

### (a) Standard of Review

[5] When a defendant moves for a mistrial based on juror misconduct, we will review the trial court's determinations of witness credibility and historical fact for clear error; we review de novo the trial court's ultimate determination whether the defendant was prejudiced by juror misconduct. *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010).

### (b) Background

After the case was submitted to the jury, a juror informed the district court that another juror may have received information about the case that was not admitted into evidence at the trial. Specifically, the juror informed the court that another juror had come back from a lunch break and stated to other members of the jury that "her husband had told her about an article about this case." That juror then stated, "'I've got some insight.'" The juror who reported this incident to the court indicated that although the other juror had not specifically said what was in the article, this juror definitely had a particular "stance."

After the court received this information, it decided to speak to each juror individually about this incident. Three of the jurors indicated to the court that they had no recollection about the incident and that they did not hear anyone talking about an article written about the case. Six of the jurors indicated they remembered a juror making a comment that her husband saw an article in the newspaper about the case. None of these jurors indicated that the juror said she read the article or that she relayed what was in the article to anyone else. One juror told the court that she remembered another juror come into

the deliberation room and tell other jurors that her husband informed her there was an article about the case in the newspaper. She also remembered that juror saying that she had told her husband she was a juror for a rape case.

The juror who was alleged to have received extraneous information about the case also spoke to the court. That juror admitted that her husband had told her there was an article in the newspaper about the case. However, she said that she had never looked at the article. She also said that she had never indicated to any other juror that she had special insight into the case.

After the court spoke with all of the jurors, McSwine moved for a mistrial on the basis of juror misconduct. He argued that there was an improper communication between a juror and her husband and that this communication amounted to juror misconduct. The court denied McSwine's motion. The court found that there was clear and convincing evidence which demonstrated that a juror told other jurors that her husband had read an article about this case. However, the court also found there was no evidence to suggest that this juror was provided with any information from the article or that she relayed any information from the article to other jurors. The court concluded:

> I find that there was no juror misconduct in this case, and I further find, even presuming for purposes of argument there was juror misconduct by [the juror] mentioning her husband had read . . . an article, and that's all I find she did, that surely was not prejudicial to . . . McSwine.

McSwine appeals from the district court's denial of his motion for a mistrial.

### (c) Analysis

[6-9] A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied

a fair trial. *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). In a criminal case, misconduct involving an improper communication between a nonjuror and a juror gives rise to a rebuttable presumption of prejudice which the State has the burden to overcome. *Id*. Extraneous material or information considered by a jury can be prejudicial without proof of actual prejudice if (1) the material or information relates to an issue submitted to the jury and (2) there is a reasonable possibility that it affected the jury's verdict to the challenger's prejudice. *Id*. Whether prejudice resulted from jury misconduct must be resolved by the trial court's drawing reasonable inferences as to the effect of the extraneous information on an average juror. *Id*.

In this case, the district court found that one of the jurors had been informed by her husband that there was an article in the newspaper about the case and that this juror told other jurors about the existence of the article. However, the court also found that this communication between the juror and her husband and between the juror and the other members of the jury did not amount to juror misconduct. The court based this decision on its finding that the juror was not provided any information from the article and that, as a result, she did not provide any information to other jurors.

Upon our review of the record, we do not find that the district court erred in determining there was no juror misconduct. There was no evidence which demonstrated that any juror received extraneous information about the specifics of this case. And, as the district court stated, even if we were to assume that there was some sort of misconduct in the juror's communications, McSwine was not in any way prejudiced by the juror's actions. A juror's knowledge that an article about the case appeared in the local newspaper, without any additional information, would not affect the average juror's ability to remain impartial.

The district court correctly denied McSwine's motion for a mistrial.

### 3. Cumulative Effect
### of Trial Errors

[10] McSwine also contends that the cumulative effect of the other errors he assigned deprived him of a fair trial. While any one of several errors may not, in and of itself, constitute prejudicial error warranting a reversal, if all of the errors in the aggregate establish that the defendant did not receive a fair trial, a new trial must be granted. See *State v. Kern*, 224 Neb. 177, 397 N.W.2d 23 (1986). See, also, *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016). The question, then, is whether in the aggregate the claimed errors denied McSwine a fair trial. See *State v. Kern, supra*.

Having rejected each of McSwine's assignments of error to this point, we also conclude that he was not denied a fair trial and reject this assignment of error as well.

### 4. Ineffective Assistance
### of Counsel

Finally, we turn to McSwine's claims of ineffective assistance of trial counsel. McSwine claims that he received ineffective assistance of trial counsel for a number of reasons. We conclude with respect to each claim either that the claim is without merit or that the record on direct appeal is insufficient to determine the merits of the claim.

[11,12] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010). The two-prong ineffective assistance of counsel test need not be addressed in order. *State v. Nesbitt*, 279 Neb. 355, 777 N.W.2d 821 (2010). To show prejudice under the prejudice component of the *Strickland* test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been

different. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

[13,14] When considering whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably. *State v. Nesbitt, supra*. Furthermore, trial counsel is afforded due deference to formulate trial strategy and tactics. When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel. *Id*.

Because McSwine has different counsel in this appeal from trial counsel, he must raise any issue of ineffective assistance of trial counsel which is known to him or which is apparent from the record, or the issue will be procedurally barred on postconviction review. See *State v. York*, 273 Neb. 660, 731 N.W.2d 597 (2007). However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

(a) Failure to Prepare Defense

McSwine claims that he received ineffective assistance because his trial counsel failed to adequately prepare his defense. He asserts that counsel did not depose C.S. prior to trial, nor did counsel obtain video surveillance of McSwine's previous encounters with C.S. from the gas station where he worked. McSwine's claims involve allegations regarding evidence and other information not presented at trial and not present in the record, and furthermore, his claims would require proof of matters outside the trial record. We therefore conclude that these claims cannot be adequately reviewed in this direct appeal.

### (b) Failure to Introduce Evidence
### Relevant to McSwine's
### Consent Defense

McSwine claims that he received ineffective assistance because his trial counsel failed to introduce certain evidence relevant to his consent defense, including evidence of a prior sexual relationship between McSwine and C.S., sufficient evidence that McSwine committed trespass on the morning of the assault, and evidence that a friend and fellow inmate of McSwine's who testified against him had access to police reports about the assault. There is no evidence in the record that would allow us to determine whether trial counsel consciously chose as part of a trial strategy not to present certain evidence related to these topics.

As we stated above, when reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. See *State v. Nesbitt, supra*. And, there is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id*. Because of this deference, the question of whether the failure to present certain evidence was part of counsel's trial strategy is essential to a resolution of McSwine's ineffective assistance of counsel claims. We therefore conclude that these claims cannot be adequately reviewed in this direct appeal.

### (c) Failure to Subject C.S. to
### Handwriting Analysis

McSwine claims that he received ineffective assistance because his trial counsel failed to subject C.S. to a handwriting analysis to prove that she wrote a note which allegedly contained directions from her apartment to a location near McSwine's home. McSwine asserts that if it had been established that C.S. wrote this note, it would have corroborated his testimony that he and C.S. planned to meet at some point on October 13, 2012. Upon our review, we conclude that

McSwine's assertions lack merit because he cannot show he was prejudiced by his counsel's failure to subject C.S. to a handwriting analysis.

During the cross-examination of C.S., McSwine's trial counsel asked her about the note which apparently contained directions from her apartment to a location near McSwine's home. C.S. testified that the handwriting on the note "look[ed] like it could possibly be" her handwriting, but that she was not sure. Upon further questioning, C.S. admitted that the handwriting looked "similar" to her handwriting, but she also indicated that she did not remember writing the note, nor did she know where the directions led.

Given C.S.' testimony about the similarity between her handwriting and the handwriting on the note, we find that McSwine was not prejudiced by his counsel's failure to obtain a handwriting analysis of C.S. Even if such a handwriting analysis proved that the handwriting on the note matched C.S.' handwriting, C.S. essentially admitted to that fact in her testimony. As such, evidence of the handwriting analysis would have been cumulative and would not have changed the result of the trial.

### (d) Failure to Strike Juror
### Who Was Related to Law
### Enforcement Officer

McSwine claims that he received ineffective assistance because his trial counsel failed to strike from the jury a prospective juror who was the brother of "a law enforcement officer who took an active role in the investigation which ultimately led to the arrest of [McSwine]." Brief for appellant at 52. McSwine alleges that as a result of counsel's failure to strike this prospective juror, he was placed on the jury which ultimately convicted him. Upon our review, we conclude that McSwine's assertions lack merit because he cannot show he was prejudiced by his counsel's failure to strike the prospective juror.

During voir dire, the following exchange occurred between defense counsel and the prospective juror at issue:

[Defense counsel]: . . . Your brother's a deputy?

[Prospective juror]: (Nodding in the affirmative.)

[Defense counsel]: Okay. And he had very limited involvement in this case. He interviewed one person, I think, and that's it, and he won't testify, and I'm not even certain the person he interviewed will testify. Did you ever talk with your brother about this case?

[Prospective juror]: (Shaking head in the negative.)

[Defense counsel]: Does he talk with you about some of his work?

[Prospective juror]: Oh, no. I mean, other than asking questions, but — me asking questions.

[Defense counsel]: Sometimes you're curious?

[Prospective juror]: Yeah.

[Defense counsel]: Okay. But you never heard anything about this case?

[Prospective juror]: No.

Based on defense counsel's questions, it is clear that, contrary to McSwine's assertion on appeal, the prospective juror's brother did not play an "active" role in the investigation of this case. Rather, it appears that the brother played a very minimal role in this investigation. Moreover, it is clear that the prospective juror had not discussed this case with his brother, nor did he even appear to know about his brother's involvement in the case until informed of such by defense counsel. There is simply no indication that the prospective juror had received any extraneous information about the case. In addition, there is no indication that the prospective juror was influenced in any way by his brother's involvement in the investigation. Accordingly, there is no reason that defense counsel should have struck the prospective juror from the jury on the basis of his brother's involvement in the case. And, because McSwine only alleges ineffective assistance due to counsel's failure to strike the juror on the basis of his brother's role in

the investigation, we do not find that McSwine was prejudiced by counsel's actions.

### (e) Failure to Object to State's
### Questions About C.S.'
### Sexual Naivety

McSwine claims that he received ineffective assistance because his trial counsel failed to "object to the [State's] repeated attempts to portray [C.S.] as a sexually naïve person." Brief for appellant at 52. McSwine alleges that because counsel failed to object to evidence that C.S. was "pure" and "innocent," such evidence was admitted and "crippled" his consent defense. *Id*. at 53. Upon our review, we conclude that McSwine's assertions lack merit. McSwine cannot demonstrate he was prejudiced by his counsel's failure to object to this evidence because, even if he had objected, such evidence was relevant and admissible.

First, we note that, as we discussed above and contrary to McSwine's assertions, the State did not offer a significant amount of evidence about C.S.' propensity for pureness or innocence. And, what evidence the State did offer, which could have been interpreted as demonstrating that C.S. was somewhat innocent, was relevant to the State's presentation of its case. For example, in his brief on appeal, McSwine emphasizes C.S.' testimony during the State's direct examination that she did not want her parents to know that she and her boyfriend had a sexual relationship. While this testimony may be interpreted to demonstrate some sort of innocence or lack of sexual experience on C.S.' part, it was relevant to explain why C.S. had initially lied to police about whether she had ever engaged in sexual intercourse prior to the day of the assault. Because this evidence was relevant to the State's case and to its discussion about C.S.' credibility, any objection made to the evidence by defense counsel would have been overruled. This allegation of ineffective assistance of trial counsel is without merit.

## V. CONCLUSION

Upon our review, we affirm McSwine's convictions for ter-roristic threats, kidnapping, first degree sexual assault, and use of a deadly weapon to commit a felony. We find that the district court did not err in excluding evidence about C.S.' sexual experience prior to the day of the assault or in overruling McSwine's motion for a mistrial due to alleged juror misconduct.

As to McSwine's claims of ineffective assistance of trial counsel, we find that he was not denied ineffective assistance of counsel when counsel failed to subject C.S. to a handwriting analysis, to strike a prospective juror whose brother was a law enforcement officer, and to object to evidence that portrayed C.S. as pure or innocent. We find that the record is insufficient to review the remaining grounds for McSwine's ineffective assistance of counsel claim.

AFFIRMED.

Moore, Chief Judge, participating on briefs.